Argued and submitted April 5, affirmed May 23, 2001

Josh WARBURTON,
Denise Warburton, Larry J. Brown,
Guy Higginson, Phil Kessinger,
and Lord Maitreya,
*Respondents,*

*v.*

HARNEY COUNTY,
*Respondent,*

*and*

STEENS MOUNTAIN PACKERS, INC.,
*Petitioner.*

OREGON NATURAL DESERT
ASSOCIATION,
*Respondent,*

*v.*

HARNEY COUNTY,
*Respondent,*

*and*

STEENS MOUNTAIN PACKERS, INC.,
*Petitioner.*

2000-096, 2000-100; A113446

25 P3d 978

William C. Cox argued the cause for petitioner. With him on the brief was Gary P. Shepherd.

Corinne C. Sherton argued the cause for respondents Josh Warburton, Denise Warburton, Larry J. Brown, Guy Higginson, Phil Kessinger, and Lord Maitreya. With her on the brief was Johnson & Sherton, P. C.

Paul D. Dewey argued the cause and filed the brief for respondent Oregon Natural Desert Association.

Timothy J. Colahan waived appearance for respondent Harney County.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

**DEITS, C. J.**

Petitioner on review, Steens Mountain Packers, Inc., seeks review of LUBA's decision reversing a Harney County Court approval of an application to site a private career school to train hunting, horsepack, and trail ride guides on land zoned for exclusive farm use (EFU). Petitioner argues that LUBA's decision represents an erroneous interpretation of law and is therefore "unlawful in substance" within the meaning of ORS 197.850(9)(a). *See 1000 Friends of Oregon v. Wasco County Court,* 68 Or App 765, 777 n 10, 686 P2d 375 (1984), *modified* 299 Or 344, 703 P2d 207 (1985). Specifically, petitioner asserts that LUBA misinterpreted ORS 215.283(1)(a)[1] by concluding that the proposed career school was not a "public or private school" allowed as an outright permitted use on EFU-zoned land.

We take the relevant facts from the county court's order and from LUBA's opinion. Petitioner owns a 160-acre parcel near the community of Frenchglen. The property is subject to a conditional use permit to operate an outfitting business providing hunting guides and horse packing trips into the Steens Mountain area. The conditional use permit also authorizes placement of portable structures on the property to accommodate the needs of the outfitting business.

In January 2000, petitioner filed with Harney County an application for a site plan approval for the proposed school. The application called for a school building that included a 14-room dormitory, staff quarters, a 30-seat cafeteria, and other facilities. Also proposed were 19 single-occupancy cabins for use by seasonal staff and students, two permanent staff dwellings, and a maintenance shop and other support structures. In support of its efforts to establish this school, petitioner obtained a one-year renewable license from the Oregon Department of Education to operate a "career school" under ORS chapter 345.[2] The license permits

---

[1] ORS 215.283(1)(a) states:

"The following uses may be established in any area zoned for exclusive farm use:

"(a)  Public or private schools, including all buildings essential to the operation of a school."

[2] ORS 345.010(4) defines a "career school" as:

training of students in three programs: Big Game Hunting Guide, Extended Day Horsepack Guide, and Trail Ride Guide. As part of the school's approved curriculum, students obtain training through the outfitting and horsepacking business operation under the existing conditional use permit.

The county's planning director initially denied the application on the ground that the proposed career school was not among the uses allowed under ORS 215.283(1)(a). Petitioner appealed the denial to the county court. The county court approved the application, concluding that this career school was a "private school" permitted on EFU designated land under ORS 215.283(1)(a).

Respondents sought review of the county court's decision with LUBA, and LUBA reversed the county court. In reaching its decision, LUBA applied the statutory analysis set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). LUBA concluded that the "text and context of ORS 215.283(1)(a) indicate that the legislature intended [the statute] to allow only public and private elementary and secondary schools" within EFU zones. Petitioner does not quarrel with LUBA's methodology, but contends that LUBA's ultimate conclusion is an erroneous interpretation of an unambiguous statute.

■ The critical question here is whether the proposed school comes within the definition of a "public or private school" as the phrase is used in ORS 215.283(1)(a). We look to the text of the statute and its context, which includes other provisions of the same statute and other related statutes, "as well as the statutory framework within which the law was enacted." *LaDu v. Oregon Clinic, P.C.*, 165 Or App 687, 690, 998 P2d 733, *rev den* 331 Or 244 (2000), *citing PGE*, 317 Or at 610-11.

■ As the parties and LUBA recognized, the phrase "public or private school" is not defined in ORS chapter 215,

---

"any private proprietary professional, technical, home study, correspondence, business or other school instruction, organization or person that offers any instruction or training for the purpose or purported purpose of instructing, training or preparing persons for any profession."

nor has this phrase as used in ORS 215.283(1)(a) been interpreted by the courts.[3] Petitioner focuses on the text of the statute and argues that the reference to "public or private schools" in ORS 215.283(1)(a) should be given its "plain and ordinary meaning," which petitioner understands to mean any place of learning. Petitioner asserts that nothing in the statute limits the kind of public or private school allowed and cites a dictionary definition of "school" as "a place or institution for teaching and learning" in support of its argument. As petitioner acknowledges, under its proposed definition, any entity that could be characterized as a place of learning, be it a beauty college or a major university, would be permissible on EFU-zoned land as an outright permitted use.

■ We first note that the legislature did not use the unmodified term "school," under which petitioner's most expansive reading would be more plausible.[4] Instead, the legislature used the modifiers "public or private." We must give effect to the phrase as a whole. *See* ORS 174.010 (court may not omit from statute words legislature included). Further, while a dictionary definition of words in a statutory phrase may be a significant consideration in determining the meaning of a phrase in a statute, that is not the only consideration, as petitioner seems to assert. In deciding what the legislature intended in using certain terms, we also consider the wording in the context in which it is used. *PGE,* 317 Or at 611.

■ The immediate context of the statutory phrase at issue here is ORS chapter 215, which generally governs county zoning and planning. LUBA concluded, after considering this immediate context, that the uses listed in ORS 215.283(1) should not be construed broadly, but should be

---

[3] In *Brentmar v. Jackson County,* 321 Or 481, 496-97, 900 P2d 1030 (1995), the Oregon Supreme Court held that the uses set out in ORS 215.213(1) and ORS 215.283(1) generally are permitted outright and are not subject to additional county-imposed conditions. The court did not address the meaning of "public or private schools" in ORS 215.283(1)(a).

[4] Petitioner argues that LUBA was wrong in reading the phrase "public or private school" to include "public schools" and "private schools." It asserts that the word to be defined is "school" and that public and private are simply adjectives that describe the funding source of the school. We believe that LUBA correctly considered the disjunctive provision "public or private school" to be the equivalent of "public schools" or "private schools."

interpreted so as not to include uses that would "subvert the goal of preserving land in productive agriculture." We agree. As LUBA correctly explains, subsection (1) of ORS 215.283 delineates *exceptions* to what normally would be allowed in EFU zones. ORS 215.203(1) provides:

> "Zoning ordinances may be adopted to zone designated areas of land within the county as exclusive farm use zones. Land within such zones shall be used exclusively for farm use *except* as otherwise provided in ORS 215.213, 215.283 or 215.284." (Emphasis added.)

The "exclusively" and "except as otherwise provided" language evidences a legislative intent to encourage the use of EFU-zoned land solely for farm use and to treat the permitted nonfarm uses in the listed statutes as exceptions to the use of that land for farming activities. In keeping with that intent, the listed nonfarm uses in ORS 215.283(1) should not be expansively interpreted to encompass uses that would subvert the goal of preserving land for agricultural use.

Petitioner argues, relying on the Supreme Court's decision in *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), that the uses included in ORS 215.283(1) are "uses of right" on agricultural lands and that those uses are not exceptions to agricultural use, but are activities that are "akin to and to be treated like permitted farm uses." Although petitioner's observation is true, it is also beside the point: Before determining that a use is a "use of right" under ORS 215.283(1), we must determine precisely what use the legislature intended to permit. The Supreme Court's decision in *Brentmar* did not address the scope of the language at issue here, and we have not construed the uses included as outright permitted uses in ORS 215.283(1)(a) in the broad sense that petitioner urges.

In our decision in *McCaw Communications, Inc. v. Marion County*, 96 Or App 552, 555, 773 P2d 779 (1989), we held that local and state provisions permitting nonfarm uses in EFU zones should be construed, to the extent possible, as being consistent with the overriding policy of preventing agricultural land from being diverted to nonagricultural use. In that case, we held that the uses allowed in an EFU zone should be limited to those that are related to and promote

agricultural use of farm land. Our discussion in *McCaw* is consistent with the legislative policy in ORS chapter 215 to preserve EFU-zoned land for farm use. *See Craven v. Jackson County*, 308 Or 281, 287-88, 779 P2d 1011 (1989) (declining to interpret broadly wording in ORS 215.203(2)(a), because "goal of preserving land in productive agriculture would be subverted").

In addition to the specific language discussed above, the policy favoring preserving EFU-zoned land in farm use is embodied in the legislature's general declaration in ORS 215.243(2) that the

> "preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation."

While it is true that a policy statement, such as this one, should not provide an excuse for delineating specific policies not articulated in the statutes, such a general purpose statement may serve as a contextual guide for the meaning of a particular statute. *DLCD v. Jackson County*, 151 Or App 210, 218, 948 P2d 731 (1997), *rev den* 327 Or 620 (1998).

In reaching its conclusion that the phrase "public or private school," as used in ORS 215.283(1), did not include the proposed school and was limited to public or private elementary and secondary schools, LUBA relied not only on the text and context in chapter 215, but looked also to other statutes that use the same or similar terms. LUBA held that it could not be said that this phrase had a well-defined legal meaning, but it concluded that its determination that the phrase was limited to elementary and secondary schools was generally consistent with the use of those terms in other statutes.

The examination of past and present statutory references to public and private elementary and secondary schools and other learning institutions shows that the legislature's use of "public or private schools" in ORS

215.283(1)(a) represents incorporation of words that had relatively consistent application in other statutes. ORS 215.283(1)(a) was first adopted in 1963 as ORS 215.213(1). Or Laws 1963, ch 577, § 3; ch 619, § 1a. At that time, counties were given the authority to plan and zone land for exclusive farm use. ORS 215.110(1) and (2) (1963). The grant of authority to zone land for farm use exclusively was tied to ORS chapter 308 (1963) (*former* ORS 308.370 to ORS 308.395, *repealed or renumbered by* various provisions of Or Laws 1999), which offered a tax benefit to farmers who use land exclusively for farm purposes. Certain "nonfarm" use exceptions to this use exclusivity were permitted; one such permitted use was "[p]ublic or private schools." ORS 215.213(1) (1963). In 1983, permission to site public or private schools in EFU-zoned areas was carried over into the then-new ORS 215.283. Or Laws 1983, ch 826, § 17. Also, in 1983, the legislature added the presently existing permission to include "all buildings essential to the operation of a school" to the authority to establish a public or private school on EFU land. Or Laws 1983, ch 826, § 6. In the following session, the legislature amended ORS 215.283(1)(a) to include the same language. Or Laws 1985, ch 811, § 7.

During roughly the same time period, 1963 to 1983, other statutory references to educational institutions demonstrate that statutory references to "public or private schools" were generally understood to be to elementary and secondary schools. For example, in the 1963 and 1983 versions of ORS chapter 326 regarding the Superintendent of Public Instruction, the State Board of Education, and the Department of Education, references to "schools" appear to refer to public elementary and secondary schools. Similarly, in the 1963 and 1987 iterations of ORS chapter 339 about compulsory education, the references to "schools" are to schools that provided elementary and secondary education. In contrast, 1963 statutes in ORS chapter 341 controlling adult education and community colleges refer to such centers of education as community colleges or education centers, and the 1983 version of the chapter identifies them simply as community colleges. The 1963 version of ORS chapter 345 concerning private vocational schools refers, generally, to

such institutions as "vocational" schools.[5] Where the word "school" appears alone in a statute, its context shows that the word refers to a particular kind of vocational school, such as a barber school. *See, e.g., ORS 345.470 (1983) or ORS 345.400* (current version). It is apparent, generally, that, where the statutes refer to an educational service or institution, other than elementary or secondary schools, the references include additional descriptive phrases other than "public or private."

After reviewing the use of the words "public or private school" and similar words in other statutes, we agree with LUBA that it cannot be said that the phrase has a well-defined legal meaning. Although we are not entirely certain of the scope of the phrase "public or private school" as used in ORS 215.283(1)(a), it does appear that the words are generally used to describe elementary and secondary schools. It is unnecessary, however, in this case to completely define the scope of the phrase. After considering its text and context—particularly the fact that this type of use is an exception to the general requirement that EFU-zoned land be used exclusively for farm uses—we have no doubt that the phrase does not include the broad range of vocational or career schools that petitioner asserts. LUBA did not err in concluding that the phrase "public or private school," as used in ORS 215.283(1)(a), does not include a career school, such as the one proposed by petitioner. Accordingly, LUBA did not err in reversing the Harney County Court's approval of petitioner's site plan.

Affirmed.

---

[5] The present "career" school reference in ORS 345.010(4), under which petitioner obtained a license, is the successor to "vocational school" in ORS 345.010(5) (1963).