Argued and submitted November 5, 2015, affirmed February 3, 2016

CENTRAL OREGON LANDWATCH,
*Respondent,*

*v.*

DESCHUTES COUNTY,
*Respondent below,*
*and*

John SHEPHERD
and Stephanie Shepherd,
*Petitioners.*

Land Use Board of Appeals
2015034; A160268

367 P3d 560

David J. Hunnicutt argued the cause and filed the brief for petitioners.

Paul D. Dewey argued the cause and filed the brief for respondent Central Oregon LandWatch.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this land use case, petitioners seek review of a Land Use Board of Appeals (LUBA) order reversing a Deschutes County decision that had granted a conditional use permit to petitioners to establish a "private park" on their property, under ORS 215.283(2)(c), for the purpose of hosting weddings and similar events for a fee. Under ORS 215.283(2)(c), subject to county approval, "[p]rivate parks, playgrounds, hunting and fishing preserves and campgrounds" may be established as nonfarm uses on property zoned for exclusive farm use. LUBA concluded that petitioners' proposed use of hosting weddings and similar events did not qualify as private park use under the statute. We review LUBA's order to determine if it is "unlawful in substance," ORS 197.850(9)(a), and, because we agree with LUBA that petitioners' proposed use of their property is not for a private park, but for a commercial event venue, we affirm.

Petitioners own a 216-acre parcel located in Deschutes County that is zoned for exclusive farm use (EFU) within a wildlife area. The property at issue is an approximately 2.6-acre portion of the larger parcel that is located at the highest elevation of the parcel and is developed with a single-family dwelling, a gazebo, a circular driveway, a large grassy area, and a one-acre parking area. At the time of petitioners' application, the remainder of the larger parcel was not in agricultural use, aside from approximately two acres used to raise poultry. In 2011, petitioners began using the 2.6 acres and dwelling to host weddings, which led to a code-enforcement complaint. Petitioners had submitted an application to the county for a commercial-event permit to conduct weddings on the property, which they did not pursue. In 2013, petitioners submitted an application to the county to establish a "private park" on their entire 216-acre parcel to host weddings and other events, which was denied by a hearings officer. In 2014, petitioners again applied to establish a private park, but on only the 2.6-acre portion of their property. In that application, petitioners emphasized the recreation that would occur during the hosted weddings and other events.

County staff administratively approved petitioners' 2014 proposal for the private park, described as follows:[1]

"The applicant is proposing to establish a private park on the subject property. The purpose of the private park would be to host wedding[s], wedding receptions, family reunions, fundraisers, and charity balls. The applicant describes the following activities that will occur during events:

"Wedding Ceremony (which typically lasts only 15-20 minutes)

"Outdoor eating with family and friends

"Public speaking using a sound system

"Listening to amplified music

"Singing, including karaoke

"Dancing in the pavilion (gazebo)

"Lawn games[,] such as volleyball and badminton in the volleyball court, croquet on the lawn, catch, bocce ball, corn hole and ring toss.

"The events would be conducted on an approximately 1.6-acre lawn area that is a 350-foot by 250[-foot] oval which includes some juniper trees. Parking is provided on a contiguous 1-acre parking area, which is accessed from a driveway that connects to Holmes Road. Event participants would have limited access to the existing dwelling and full access to a gazebo on the property. The wedding party (including bridesmaids, groomsmen, and immediate family) will have access to the main floor of the home and two upstairs rooms. Weddings will not be conducted inside the dwelling. Temporary tents and the gazebo will be used in the event of inclement weather.

"Restrooms will be provided through portable restrooms and guest access provided to an existing downstairs restroom in the dwelling. Food is either prepared off site or cooked on-site by licensed caterers using their own equipment. The existing kitchen in the dwelling will be used for food assembly only.

---

[1] Petitioners also proposed to allow guests to "tent camp or stay in recreational vehicles following events as a precaution against unsafe driving." However, the county did not approve campground use as part of petitioners' proposal for the private park.

"The private park would be open to event participants one weekend day per week beginning in late May of each year and ending in early October, not to exceed 18 days per calendar year. Each reception would last no more than 8 hours and conclude by 10 p.m. A limit of no more than 250 guests per event would be enforced by the applicant."

The county board of commissioners undertook direct review of the staff decision and approved petitioners' application, adopting the staff findings and decision with additional findings and conditions. The county's additional findings included that the passage of the agri-tourism and commercial activity statute, ORS 215.283(4), as adopted into the county's code, "neither precludes nor was intended to preclude" private park weddings, that the "proposed use constitutes a private park," and that "[n]othing in the statute [ORS 215.283(2)(c)] requires construing the term 'private park' narrowly under *Utsey v. Coos County*, [176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003)]."

The county's conclusion that petitioners' proposed use constitutes a private park was based on the recreational uses that would occur in connection with weddings and other events, including outdoor eating, public speaking, listening to music, singing, dancing, and lawn games. The county found that a wedding ceremony itself was not recreation, but "that the other types of activities that could occur during wedding receptions and other special events would fall within the definition of 'recreation' and therefore would be encompassed in the 'private park' use." (Emphasis omitted.) The county further reasoned that weddings, and other events, could take place in a private park "so long as they are incidental and subordinate to the recreational activities—*i.e.*, minor and secondary activities relative to the recreational activities." The county then determined that, under petitioners' proposal, wedding *ceremonies* would be minor and secondary to the other proposed activities, because not all events would have a ceremony and, when there is a wedding ceremony, the ceremony itself "lasts for just a fraction of the time in which the event is held."

Central Oregon LandWatch (LandWatch) petitioned LUBA to review the county's decision, arguing, among other things, that petitioners' proposed use of their property did

not qualify as a "private park" under ORS 215.283(2)(c). LUBA agreed and reversed the county's decision. LUBA relied on its prior decisions in *Spiering v. Yamhill County*, 25 Or LUBA 695 (1993), and *Utsey v. Coos County*, 38 Or LUBA 516 (2000), *rev dismissed*, 176 Or App 524, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003), in which it determined that the touchstone for whether a proposed use qualified as a park or private park was whether the proposed use was recreational. In those decisions, LUBA relied solely on the dictionary definition of "park." Here, LUBA concluded that the recreational touchstone was not met. LUBA reasoned as follows:

"Stated simply, the county's analysis represents the tail wagging the dog. As we understand the proposed use, the public is not coming to [petitioners'] property to engage in recreational activities on [petitioners'] lawn. The public *is* coming to the property (and paying for the right) to conduct some focal event (a wedding, wedding reception, family reunion, fundraiser, charitable ball, etc.,) that is the entire reason for being on the property in the first place. The only basis the county cites for concluding that a wedding or other event is 'incidental' to the above-listed activities (eating, dancing, lawn games, etc.) is the temporal brevity of ceremonial aspects of the focal event compared to the amount of time spent celebrating the focal event through eating, dancing, etc. However, comparing the amount of time spent on alleged 'recreational' activities does not accurately reflect the relationship between the focal event and those activities. Clearly, it is the focal event that is the primary use, and any associated activities (eating, dancing, lawn games, etc.) are, at best, incidental to the focal event. No party argues on appeal that the focal events (weddings, wedding receptions, family reunions, fundraisers, charitable balls, etc.) themselves constitute 'recreation' or 'recreational activities,' and they do not. Thus, even if some of the incidental activities associated with the focal event (eating, dancing, etc.) could be described as 'recreational activities,' such incidental activities cannot convert the proposed primary event venue use into a recreational use that is essential to constitute a 'private park' for purposes of ORS 215.283(2)(c).

"The foregoing is consistent with our approach in resolving a similar issue regarding whether a proposed wedding

event venue fit within the use category of 'on-site filming,' which like private parks is a category of non-farm use allowed in the EFU zone, pursuant to ORS 215.306. *Smalley v. Benton County*, ___ Or LUBA ___ (LUBA No. 2014-110, Mar 17, 2015). In *Smalley*, the applicant attempted to argue that a wedding event venue constitutes 'on-site filming,' or the recording of 'documentary,' because the wedding event is often recorded or video-taped by the participants. The county rejected that argument, and LUBA affirmed the county's decision. We concluded that the proposed primary use of the property was the wedding event itself, and that any filming or recording of that event that would occur is, at best, incidental to the primary wedding event. Slip op at 10.

"Similarly, in the present case, as proposed the primary use is an event venue to conduct various events (weddings, receptions, reunions, fundraisers, charitable balls, etc.), and any 'recreational' activities associated with such events (eating, dancing, singing, lawn games) that may or may not occur are, at best, incidental to the event. In both *Smalley* and the present case, the applicant is attempting to use incidental elements of a proposed primary use to fit within a use category that does not encompass the proposed primary use.

"A different way to articulate the distinction we made in *Smalley* and make here in the present case is to apply a 'causation' test. Would the elements that arguably fit within the use category (filming in *Smalley*, 'recreational activities' in the present case) occur on the property without the wedding or other event? The answer in both cases is clearly no. The filming in *Smalley*, if it occurs, would occur only if there is a wedding on the property. In the present case, any recreational activities on the property will occur only if there is an event (wedding, reception, reunion, fundraiser, charitable ball, etc.) that is the reason the event participants are allowed on the property. But for the event, the public would not engage in any recreational activities on [petitioners'] property. The event is therefore the primary use, and any incidental recreational activities that may or may not occur in association with the event do not qualify the proposed event venue as a private park allowed on EFU land under ORS 215.283(2)(c)."

On review, petitioners argue that LUBA erred in its application of ORS 215.283(2)(c) to their property. In their

first assignment of error, petitioners argue that LUBA erred in its interpretation of ORS 215.283(2)(c) by focusing on the intention of people in booking petitioners' property for an event, instead of, as the county did, focusing on the actual recreational use those people make of petitioners' property once there. Petitioners argue that LUBA's approach is inconsistent with LUBA's prior opinions regarding private park use, and is wrong, as a matter of law, because ORS 215.283(2) is concerned with the actual nonfarm *uses* that may be allowed on EFU land, and not on the motivation of the people engaging in the nonfarm use. Petitioners further argue that LUBA mischaracterized the proposed recreational activities as "incidental" to some "focal event" because the events proposed for their property are made up of the recreational activities—that is, petitioners assert, LUBA made a false distinction because there would be no "focal event" without the recreational activities. By that same reasoning, petitioners argue that LUBA's "causation test" is also wrong as a matter of law. Finally, in a second assignment of error, petitioners argue that, if LUBA's analysis were correct, then LUBA was required to remand to the county to apply that test to petitioners' application, instead of simply reversing the county's approval.

LandWatch defends LUBA's reasoning. LandWatch emphasizes that LUBA's decision was not based on the intention of people going to petitioners' property, as characterized by petitioners, but was based on petitioners' proposal to use their property as an event venue, which was not a proposed recreational use. LandWatch also argues that petitioners' attempt to cast eating, dancing, speaking, etc., as "recreational uses" is so broad as to make the term private park meaningless, which is contrary to interpreting nonfarm uses narrowly, as explained in the dissent in *Utsey*, 176 Or App at 572-74 (Deits, C. J., dissenting). Finally, LandWatch points out that the legislature enacted ORS 215.283(4) in 2011 to allow commercial events on EFU land, which, it argues, supports its reading that a private park does not include a commercial event venue. In response to petitioners' second assignment of error, LandWatch argues that LUBA was not required to remand to the county because LUBA's finding that petitioners' proposed use was for an event venue, and

not a private park, was supported by substantial evidence, leaving nothing for the county to do on remand.

The parties' arguments require us to construe ORS 215.283(2)(c) to determine whether petitioners' proposed use for their property falls within the meaning of the term "private park." In construing the statute, "[w]e give primary weight to the text and context of the provision in light of any legislative history that may be appropriately considered." *Greenfield v. Multnomah County*, 259 Or App 687, 698, 317 P3d 274 (2013) (citing *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009)). Additionally, we interpret nonfarm uses listed in ORS 215.283—which are exceptions to what is normally permitted in an EFU zone—consistently with the legislature's goal of preserving agricultural land. That is, listed nonfarm uses "should not be expansively interpreted to encompass uses that would subvert the goal of preserving land for agricultural use." *Warburton v. Harney County*, 174 Or App 322, 328, 25 P3d 978, *rev den*, 332 Or 559 (2001) (discussing ORS 215.283(1)); *see also Utsey*, 176 Or App at 573 (Deits, C. J., dissenting) (interpreting "private park" in ORS 215.283(2)(c) restrictively because "the pervasive theme in both Goal 3 and the statutes is the preservation of agricultural land for farm use").

In general, ORS 215.283(2) lists 27 nonfarm conditional uses that a county may allow in an EFU zone if the county determines that the use will not significantly affect surrounding lands devoted to farm use. *See* ORS 215.296(1) (setting out standards for approving nonfarm uses listed under ORS 215.283(2)). The specific provision at issue here provides:

> "(2)   The following nonfarm uses may be established, subject to the approval of the governing body or its designee in any area zoned for exclusive farm use subject to ORS 215.296:
>
> "* * * * *
>
> "(c)   Private parks, playgrounds, hunting and fishing preserves and campgrounds. * * *"

Neither "park" nor "private park" is defined by the legislature for purposes of that statute. We thus turn to the

dictionary to aid in our understanding of the plain meaning of the term. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295-96, 337 P3d 768 (2014) (explaining that, when the legislature does not define a statutory term, courts look to the plain meaning and frequently consult dictionaries when doing so). "Private," as it applies here, is defined as "intended for or restricted to the use of a particular person or group or class of persons : not freely available to the public <a ~ park> <a ~ party>." *Webster's Third New Int'l Dictionary* 1804 (unabridged ed 2002). The relevant dictionary definitions of "park" are:

> "2 : a tract of land maintained by a city or town as a place of beauty or of public recreation 3 : a large area often of forested land reserved from settlement and maintained in its natural state for public use (as by campers or hunters) or as a wildlife refuge[.]"

*Webster's* at 1642. Thus, the plain meaning of private park encompasses an area set aside for outdoor recreation or enjoyment of the area's natural state by "a particular person or group or class of persons."

In looking to the dictionary, however, we do not agree with LUBA's prior construction of the term "park," as set out in *Speiring* and *Utsey*—that is, that the term "private park" in ORS 215.283(2)(c) can encompass any use, so long as it can be characterized as "recreational." Such a reading ignores the common sense, plain meaning of the term "private park" and would encompass all manner of outdoor uses that could include recreation just by tacking on the word "park." For example, ball parks, theme parks, amusement parks, and water parks are all outdoor uses that involve recreation, and contain the word "park," but those uses are high-intensity uses that may be incompatible with EFU zones and are not part of the common sense meaning of the term private park. When we construe a statute, we do not slavishly apply expansive dictionary definitions at the expense of the plain meaning of a word in the context in which it appears. *See, e.g., State v. Gonzalez-Valenzuela*, 358 Or 451, 461-62, 365 P3d 116 (2015) (explaining the importance of construing the plain meaning of statutory text in the context of the statute itself; "nuanced connotations may represent the plain meaning of a term in context even though

those connotations result from tacit knowledge, accumulated experience, and common sense that are not reflected well—if at all—in dictionary definitions"); *Warburton*, 174 Or App at 327 (explaining that, "while a dictionary definition of words in a statutory phrase may be a significant consideration in determining the meaning of a phrase in a statute, that is not the only consideration * * *[;] we also consider the wording in the context in which it is used"). "Park" when not paired with modifiers such as "ball" or "amusement" has a meaning that encompasses narrower, lower-intensity types of outdoor recreational uses than LUBA's past construction of that term would allow.

The other nonfarm uses that may be established under ORS 215.283(2)(c) support our more restrictive reading. That section also includes private "playgrounds, hunting and fishing preserves and campgrounds." Those nonfarm uses, like parks, are low-intensity outdoor recreational uses. *See Webster's* at 1737 (defining "playground" as "a piece of ground used for and usu. having special facilities for recreation esp. by children"); *id.* at 1794 (defining "preserve" as "an area (as a tract of land or body of water) restricted for the protection and preservation of animals, trees, or other natural resources * * * : one used primarily for regulated hunting or fishing"); *id.* at 323 (defining "campground" as "the area or place (as a field or grove) used for a camp, for camping, or for a camp meeting"). The text of ORS 215.283(2)(c) indicates that the legislature intended to allow nonfarm conditional uses that allowed certain types of outdoor recreational activity—that is, the legislature was not focused on "recreation" without limits, it was focused on low-intensity outdoor recreational uses, for which enjoyment of the outdoors in an open space or on land in its natural state is a necessary component. Additionally, nothing in the plain text of ORS 215.283(2)(c) suggests that the scope of the term "private park" encompasses outdoor commercial event venues, as that is a use that does not fall within the plain meaning of a park.

The legislative history of ORS 215.283(2)(c) supports that plain reading. "Private parks, playgrounds, hunting and fishing preserves and campgrounds" have been allowed as nonfarm conditional uses since 1973, when

that provision was enacted as part of ORS 215.213(2)(c). Or Laws 1973, ch 503, § 4. The same uses, without modification, were carried over into ORS 215.283(2)(c) in 1983, when ORS 215.283 was enacted. Or Laws 1983, ch 826, § 17. In 1973, the legislature created the list of allowed nonfarm conditional uses in EFU zones in an amendment to ORS 215.213.[2] As originally proposed, the section that became ORS 215.213(2)(c) allowed "[p]ublic and private open recreation uses, including private parks, playgrounds, hunting and fishing preserves and campgrounds." Senate Bill (SB) 101, § 4 (1973). That section was broken into separate sections for private and public parks and other uses without comment by a subcommittee, as part of a renumbering and rewording of the nonfarm conditional use list. *See* SB 101, § 4, re-engrossed (1973); Tape Recording, Subcommittee to Senate Committee on Revenue, SB 101, Apr 30, 1973, Tape 35, Side 1 (statements of Theodore DeLooze, Dept. of Revenue, and Sen Victor Atiyeh, discussing amendments to be proposed by DeLooze). However, the proposed wording is consistent with the plain text of the statute that was ultimately enacted, in that it demonstrates the legislature's understanding that the listed uses were uses that allowed open space, outdoor recreation.

---

[2] That original list was as follows:

"(2) The following nonfarm uses may be established, subject to the approval of the governing body of the county, in an area zoned under ORS 215.010 to 215.190 for farm use:

"(a) Commercial activities that are in conjunction with farm use.

"(b) Operations conducted for the exploration, mining and processing of geothermal resources as defined by subsection (4) of ORS 522.010, aggregate and other mineral resources or other subsurface resources.

"(c) Private parks, playgrounds, hunting and fishing preserves and campgrounds.

"(d) Parks, playgrounds or community centers owned and operated by a governmental agency or a nonprofit community organization.

"(e) Golf courses.

"(f) Commercial utility facilities for the purpose of generating power for public use by sale."

Or Laws 1973, ch 503, § 4. That list has been substantially amended and expanded since 1973, so that it now includes 27 nonfarm conditional uses and provides further explanation for certain allowed uses. *See* ORS 215.283(2). The legislature, however, has not amended, expanded, or clarified "private parks" as an allowed use.

The one use in the nonfarm conditional use list that did garner significant discussion in committee was the allowance of "[c]ommercial activities that are in conjunction with farm use." Committee members were concerned about what commercial activities that section would allow or not allow, and discussed whether the provision should instead list specific allowed activities. *See, e.g.*, Tape Recording, Subcommittee to Senate Committee on Revenue, SB 101, Apr 30, 1973, Tape 35, Side 1; Tape Recording, Subcommittee to Senate Committee on Revenue, SB 101, May 9, 1973, Tape 37, Side 1; Tape Recording, Subcommittee to Senate Committee on Revenue, SB 101, May 11, 1973, Tape 37, Side 2. Those discussions indicate that committee members were focused on what commercial activities should be allowed in EFU zones. The committee, however, did not discuss private parks, or other outdoor recreational uses, as part of that discussion about commercial activities. Although not directly indicative of the legislature's intent, the absence of discussion on that point, despite the committee members' expressed concerns about the commercial activities that would be allowed in EFU zones, suggests that, if the legislature had intended private parks to encompass a primarily commercial activity, it would have included wording in the statute to indicate that intention.[3] *See also* Or Laws 1973, ch 503, § 4 (in concurrent enactment allowing "*commercial* utility facilities for the purpose of generating power for public use by sale" and allowing "golf courses" separately from private parks (emphasis added)). Based on the plain meaning of ORS 215.283(2)(c), as supported by the legislative history, the scope of the term "private park" allows

---

[3] Although subsequent enactments cannot aid us in determining what the 1973 legislature intended when it enacted the provision allowing private parks as a nonfarm conditional use, we note that subsequent amendments indicate that the legislature has continued to use the term "commercial" or "commercial activity" when it has intended to allow commercial activities in connection with a nonfarm conditional use that could refer to either a commercial or noncommercial activity. *See* ORS 215.283(2)(h) (allowing personal-use airports, including "commercial aviation activities in connection with agriculture"); ORS 215.283(2)(n)(A) ("[c]ommercial dog boarding kennels"); ORS 215.283(2)(x) (allowing living history museum with "limited commercial activities and facilities that are directly related to the use and enjoyment of the museum"); *see also* ORS 215.283(4) (allowing "agri-tourism and other commercial events or activities that are related to and supportive of agriculture"); *cf.* ORS 215.283(2)(t) (allowing a "destination resort").

low-intensity outdoor recreational use on farm land that has as a component enjoyment of the outdoors. However, the plain meaning and legislative history does not support an expansive construction of "private park" that would allow a primarily commercial activity that is not such a park use.

With that understanding of "private park," we turn to petitioners' proposed use of their property. Petitioners propose to establish a private park for the sole purpose of "host[ing] wedding[s], wedding receptions, family reunions, fundraisers, and charity balls." Under that proposal, petitioners' park would only be "open to event participants one weekend day per week beginning in late May of each year and ending in early October, not to exceed 18 days per calendar year." Petitioners' proposed use does not resemble a private park use as contemplated in ORS 215.283(2)(c). Petitioners do not propose to maintain a tract of land for natural enjoyment and outdoor recreational use for a particular group or class of persons; rather, petitioners seek to rent out their lawn for up to 18 events per year (each involving a different group of persons), and for no other purpose. Under petitioners' proposed reading of the statute, any use that takes place outside would qualify as a private park use, so long as lawn games were made available. However, that is not what the legislature intended when it included private parks as allowed nonfarm conditional uses under ORS 215.283(2)(c).

In discussing petitioners' proposal, we emphasize that we are not focusing on the intention of future event participants, as petitioners argue LUBA did; we are focusing on the use to which *petitioners* propose to put their property. That is the only proper focus for our inquiry because it is petitioners' proposal that is either allowed or not allowed under the statute. Nothing in petitioners' application suggests that they intend to put their property to use as a private park. That some recreational uses *may* occur during the proposed events, such as lawn games, cannot drive our inquiry. We must look at the use that petitioners propose, which is *solely* to rent out their lawn for a different event 18 times a year to include sound systems, catering, access to the dwelling for wedding parties, and, perhaps, lawn games. That is, petitioners do not propose to establish a private park

for use *as a park*; petitioners propose to establish a private park solely for use *as a commercial event venue*. Because petitioners' proposed use of their property is for a commercial event venue and not a private park, LUBA did not err when it reversed the county's decision.

Because we affirm LUBA's decision, we briefly address petitioners' second assignment of error that LUBA should have remanded to the county for further proceedings instead of reversing the county's decision outright. We reject that assignment of error without extended discussion. Based on our construction of ORS 215.283(2)(c), petitioners' proposal is not for a private park under that statute, and, thus, it cannot be approved under that provision by the county as a matter of law.

Affirmed.