Submitted April 1, affirmed on petition and cross-petition June 23, 2022

**1000 FRIENDS OF OREGON,**
*Respondent,*
*and*

**Dennis TYLKA,**
*Respondent*
*Cross-Petitioner,*

*v.*

**CLACKAMAS COUNTY,**
*Petitioner*
*Cross-Respondent.*

Land Use Board of Appeals
2021003; A177973

514 P3d 553

In a land use action, the Land Use Board of Appeals (LUBA) reversed and remanded Clackamas County's decision to adopt Ordinance ZDO-273, which amended the county's Zoning and Development Ordinance (ZDO) to authorize the short-term rental use of dwelling units and guest houses for up to 30 consecutive nights throughout the county, including on farm and forest land. LUBA explained that ORS 215.283 and OAR 660-006-0025 strictly regulate the use of dwellings located on resource land, and concluded that state law does not expressly allow the short-term rental use of dwellings on land zoned for resource uses. On review, the county contends that LUBA erred in concluding that state law must explicitly provide for the short-term rental of a dwelling in order for dwellings otherwise legally authorized in resource zones to be used as such. *Held*: LUBA's order was not unlawful in substance. LUBA was correct to conclude that the county's amendments to the ZDO violated the provisions of ORS chapter 215 and its implementing regulations.

Affirmed on petition and cross-petition.

Nathan K. Boderman and Stephen L. Madkour and Clackamas County Counsel, filed the briefs for petitioner-cross-respondent.

Dennis Tylka filed the brief, *pro se.*

Andrew Mulkey filed the brief for respondent 1000 Friends of Oregon.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed on petition and cross-petition.

**SHORR, P. J.**

This case involves a dispute related to the use of homes as short-term rentals on farm and forest land in Clackamas County. The county adopted Ordinance ZDO-273, which amended the county's Zoning and Development Ordinance (ZDO) to authorize the short-term rental use of dwelling units and guest houses for up to 30 consecutive nights throughout the county, including on farm and forest land. Petitioner 1000 Friends of Oregon (1000 Friends) and intervenor-petitioner Dennis Tylka (Tylka) sought review of the county's decision by the Land Use Board of Appeals (LUBA). LUBA agreed, in substantial part, and, accordingly, remanded the county's decision. The county and Tylka each seek judicial review of LUBA's decision. We affirm on Tylka's cross-petition without discussion, and we write to address the assignment of error raised in the county's petition. We review the LUBA order to determine if it is "unlawful in substance," ORS 197.850(9)(a), and conclude that it is not. We therefore affirm on the petition and cross-petition.

## BACKGROUND

We take the pertinent background facts from LUBA's final order and from undisputed evidence in the record. In 2019, the Clackamas County Board of County Commissioners (BCC) instructed county staff to look into ways to allow and regulate short-term occupancies of homes throughout Clackamas County, including homes that are often advertised on websites such as Airbnb, HomeAway, VRBO, VacationRentals.com, or Booking.com. At that time, short-term rentals were not specifically addressed in the county's ZDO. The county thereafter began a two-part project to authorize and regulate the short-term rental use of dwelling units and guest houses. In November 2020, the county completed one part of the project with the adoption of Ordinance No. 09-2020, which created a new chapter in Clackamas County Code (CCC), title 8, Business Regulations. The new chapter establishes a registration program for short-term rentals in the county. It further sets out standards addressing elements such as maximum occupancy and minimum parking requirements, and compliance with the county's garbage requirements, noise

control, parking, and towing ordinances. The chapter also includes enforcement mechanisms such as penalties and fines for noncompliance with the terms of the registration program.

In December 2020, the county completed the second part of the project with the adoption of Ordinance ZDO-273, which makes amendments to the county's ZDO in chapter 202 (Definitions) and chapter 833 (Special Use Requirements - Guest Houses) to modify the definition of "dwelling unit" and expand the allowed use of guest houses. The amendment to ZDO 202 expanded the definition of "dwelling unit," which had, prior to the amendment, provided that it was "designed for residential occupancy by one family."[1] The amendment added the following italicized language:

> "A building, or portion thereof, with one or more rooms designed for residential occupancy by one family. *A dwelling unit may be occupied by one family or, except as otherwise provided in this Ordinance, may be used for residential occupancy by no more than 15 persons for a period that does not exceed 30 consecutive nights by any one person.*"

In ZDO 833.01, regarding guest houses, the amendments removed a requirement that the "[o]ccupants of the guest house and the primary dwelling shall live together as one housekeeping unit" and removed a prohibition on a guest house being a source of rental income. The following italicized language was added and the language with the strikethrough was deleted:

> "A.  <u>Use</u>: A guest house shall be used only by members of the family residing in the primary dwelling, their nonpaying guests, or their nonpaying employees who work on the premises, ~~A guest house shall not be a source of rental income.~~ *or for residential occupancy by one or more paying guests for a period that does not exceed 30 consecutive nights by any one person. Residential occupancy by paying guests*

---

[1] ZDO 202 defines a "family" as "[a]ny individual or group of persons, regardless of relationship but not exceeding 15 persons, living together as a single housekeeping unit within a dwelling unit"; a "housekeeping unit" is defined in relevant part as "a living arrangement within a dwelling unit in which the kitchen, living and dining rooms, and other general living areas of the dwelling unit are shared in common, and the duties, rights, and obligations associated with the performance of domestic tasks and management of household affairs, are shared by residents by virtue of legal relationship or mutual agreement."

*plus occupants of the primary dwelling shall not exceed 15 persons.*

"\* \* \* \* \*

"E.  Facilities: ~~Occupants of the guest house and the primary dwelling shall live together as one housekeeping unit, sharing the kitchen and laundry facilities in the primary dwelling.~~ The guest house may *contain* ~~include~~ one bathroom plus one additional sink, but shall not include *laundry facilities,* a stove, oven, or other cooking appliances."

1000 Friends petitioned for review to LUBA,[2] raising two assignments of error: 1) that the county's expansion of the allowed use of a dwelling unit *on farm and forest land* conflicted with the statutory meaning of "dwelling" in ORS 215.283 and that the amendment of the ZDO also conflicted with the provisions of its own zoning ordinance, and 2) that the county's decision to amend the definition of dwelling unit and the scope of the allowed use of a guest house did not comply with the agriculture and forest policies of the county's comprehensive plan or statewide planning Goal 3 (Agricultural Lands)[3] and Goal 4 (Forest Lands).[4] 1000 Friends asserted that the county's decision to allow the use on farmland of a dwelling and accessory structures as temporary accommodations for paying overnight guests violates state law and the county's zoning ordinance and that the county's decision misconstrued the uses allowed pursuant to a dwelling approval on forest land. In sum, 1000 Friends' argument was that the county's decision improperly construes applicable portions of ORS chapter 215 and OAR 660-006-0025.

[2] Tylka also sought review by LUBA, raising five assignments of error that included assertions that the county's ZDO amendments violated statewide planning Goal 2 and certain Clackamas County Comprehensive Plan policies; Tylka's assignments were not focused solely on resource lands, but rather challenged the county's decision more broadly. Neither party challenged the county's CCC title 8 amendments.

[3] Goal 3 is "[t]o preserve and maintain agricultural lands."

[4] Goal 4 is

"[t]o conserve forest lands by maintaining the forest land base and to protect the state's forest economy by making possible economically efficient forest practices that assure the continuous growing and harvesting of forest tree species as the leading use on forest land consistent with sound management of soil, air, water, and fish and wildlife resources and to provide for recreational opportunities and agriculture."

As we understand the county's position before LUBA, it disputed 1000 Friends' premise that the changes to the ordinances expanded the allowed use of dwelling units on farm and forest land. The county argued that, for purposes of the ZDO, "a dwelling remains a dwelling regardless of whether occupancy is on a short-term or long-term basis" and that, under the amended provisions, the "use of dwellings and guest houses [remains] limited to 'residential occupancy.'" The county essentially argued that, if a dwelling was originally approved for residential use on resource land, the fact that it could be used as a short-term rental under the amendments to the ZDO did not change the nature of its use and it remained a permissible use under the applicable statutes and rules.[5]

LUBA described the parties' central dispute as "whether a short-term rental is a permitted use of a dwelling unit or guest house on farm or forest land where the dwelling unit or guest house is otherwise allowed under applicable law." LUBA set out the pertinent statutory scheme for its consideration:

"The ZDO amendments allow the short-term rental use of dwelling units and guest houses throughout the county, including in the county's Exclusive Farm Use (EFU) zone, governed by ZDO 401; Timber (TBR) zone, governed by ZDO 406; and Ag/Forest (AG/F) zone, governed by ZDO 407. ORS 215.203(1) provides in part, 'Zoning ordinances may be adopted to zone designated areas of land within the county as [EFU] zones. *Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284.*' (Emphasis added.) Certain dwellings are allowed on land zoned EFU under ORS 215.283(1) and others under ORS 215.283(2). ORS 215.284 restricts the establishment of single-family dwellings not provided in conjunction with farm use on land zoned EFU. ORS 215.283(1)(e) allows accessory structures

---

[5] LUBA explained that, in the county's view, "the ZDO amendments cannot and do not authorize the short-term rental use of an existing dwelling unit if that use would be prohibited by the decision that initially approved the dwelling unit." LUBA pointed to findings by the county in the record that asserted that "[d]wellings that are approved with specific restrictions on occupancy and/or usage would remain ineligible for use as [a short-term rental]. Examples of such dwellings include temporary dwellings for care ('hardship dwellings'), accessory farmworker dwellings, or caretaker dwellings."

associated with farm and forest use. The uses that are allowed on forest land are set out in OAR 660-006-0025 and include the dwellings authorized by ORS 215.705 to 215.757 as well as other dwellings under prescribed conditions. OAR 660-006-0025(1)(d), (e)."

(Footnotes omitted.)

LUBA further explained that

"ORS 215.283 lists the uses that are allowed on EFU land, and a county cannot allow uses that are not listed under the statute in an EFU zone. OAR chapter 660, division 6, similarly identifies the limited uses that are allowed on forest land. We discuss each below.

"The uses listed in ORS 215.283(1) are authorized as of right, and counties may not restrict those uses through additional local standards. *Brentmar v. Jackson County*, 321 Or 481, 496, 900 P2d 1030 (1995). ORS 215.283(2) lists nonfarm uses and structures that are conditionally authorized and that must satisfy ORS 215.296(1), which we refer to as the farm impacts test. The farm impacts test requires the local governing body or its designee to find that the use will not:

"'(a)   Force a significant change in accepted farm or forest practices on surrounding lands devoted to farm or forest use; or

"'(b)   Significantly increase the cost of accepted farm or forest practices on surrounding lands devoted to farm or forest use.' ORS 215.296(1).

"The nonfarm uses listed under ORS 215.283(2) may also be subject to any local standards enacted pursuant to ORS 215.296(10).

"ORS 215.283 regulates the use of EFU land. Accordingly, if the county wants to allow the nonfarm short-term rental *use* of a dwelling unit on EFU land, that *use* must be allowed pursuant to either ORS 215.283(1) or (2). *** [W]e agree with [1000 Friends and Tylka] that, absent any identification by the county of the authority in ORS 215.283, or the Land Conservation and Development Commission's [(LCDC's)] rules implementing that statute, for allowing the short-term rental use of dwelling units or guest houses on EFU land, that use is not allowed under ORS 215.283. The uses that are allowed on forest land are similarly

restricted by OAR 660-006-0025 and, absent any identifi-
cation of authority under OAR 660-006-0025 for allowing
the short-term rental use of dwelling units or guest houses
on forest land, that use is not allowed."

(Emphasis in original; footnote omitted.)

In reaching its decision to remand the county's deci-
sion, LUBA applied the statutory construction analysis set
out in *PGE v. Bureau of Labor and Industries*, 317 Or 606,
610-11, 859 P2d 1143 (1993) and *State v. Gaines*, 346 Or 160,
171-72, 206 P3d 1042 (2009) to determine the intent of the
legislature. LUBA began with the text:

"ORS Chapter 215 provides no generally applicable defi-
nition of 'dwelling' or 'residence,' and we therefore look to
the plain, ordinary meaning of those words. 'Dwelling'
means 'a building or construction *used for a residence*' and
'residence' means 'a building *used as a home* : DWELLING.'
*Webster's Third New Int'l Dictionary* 706, 1931 (unabridged
ed 2002) (boldface in original; emphases added). As the
county points out, the term 'dwelling,' considered alone,
does not necessarily require owner occupancy or occupancy
of a given duration. However, the term 'residence' refers
to 'a building used as a home,' and 'home' is defined not
only as 'a private dwelling : HOUSE' but also as 'the house
and grounds with their appurtenances habitually occupied
by a family : one's principal place of residence : DOMICILE.'
*Webster's* at 1082 (boldface in original). The various terms
connote a distinction between a building used as a 'home'
and a building used as something other than a 'home,' for
example, a hotel."

LUBA concluded that the text alone did not resolve the ques-
tion of whether a short-term rental was an allowed use of a
dwelling or residence in a resource zone, and it continued on
with a contextual analysis. Ultimately, LUBA determined
that the county was approaching the issue from the wrong
direction. It stated,

"ORS 215.283 and related statutes demonstrate that state
law strictly regulates transient lodging on resource land
with consideration of its effects on accepted farm and forest
practices. The question is not whether the short-term rental
use of dwellings is expressly *prohibited* on land zoned for
resource uses. Instead, the question is whether state law

expressly *allows* the short-term rental use of dwellings on land zoned for resource uses. The county has not demonstrated that it does."

(Emphases in original.)

## ISSUE ON REVIEW

On review before us, the county raises a single assignment of error in which it contends that LUBA erred in concluding that state law must explicitly provide for the short-term rental of a dwelling in order for dwellings otherwise legally authorized in resource zones to be used as such. As we understand the county's argument, it reiterates the position that it took before LUBA: In its view, the approval or existence of a lawful "dwelling" on farm or forest land carries with it a right to use that dwelling for ordinary residential purposes, and short-term rental is indistinguishable from ordinary residential use of a dwelling. Thus, the county asserts that "the authorization to maintain and occupy a dwelling includes the right to occupy that dwelling on a short-term basis unless otherwise prohibited by state or local regulation, and that no explicit provision in state law is necessary to authorize the use of existing dwellings for short-term occupancies."

1000 Friends defends LUBA's analysis and conclusion. It argues in part that "[t]he use contemplated by the county would allow a dwelling to function as a business operated out of a dwelling to provide customers or paying guests overnight lodging," and that "ORS chapter 215 and its implementing regulations limit the use of non-farm and non-forest businesses on farm and forest land." According to 1000 Friends, the county's amendments do not impose any of the relevant approval criteria in the statutes or regulations that would be required to permit a dwelling on farm or forest land to operate as an overnight lodging business. For that reason, it contends, LUBA was correct to conclude that the county's amendments violated the provisions of ORS chapter 215 and its implementing regulations.

As noted, we review LUBA's order to determine if it is "unlawful in substance." ORS 197.850(9)(a). "A LUBA order is unlawful in substance if it represented a mistaken

interpretation of the applicable law." *Nicita v. City of Oregon City*, 317 Or App 709, 716, 507 P3d 804 (2022) (internal quotation marks omitted). At the outset, we agree with LUBA's textual analysis, as recounted above, of the terms "dwelling" and "residence," and with its conclusion that the "various terms connote a distinction between a building used as a 'home' and a building used as something other than a 'home,'" such as a hotel.

LUBA stated that its textual analysis "does not, however, resolve the question of whether a short-term rental is an allowed use of a dwelling or residence in a resource zone." We understand the county to take issue with that reasoning. That is, the county contends that a dwelling or residence may always be used for residential purposes, and short-term rental is indistinguishable from ordinary residential use of a dwelling. Accordingly, in the county's view, short-term rental is always allowed regardless of whether it is explicitly allowed by the statutes and rules addressing land uses in resource zones.

For purposes of considering the county's argument, we assume, without deciding, that the county is correct that ORS chapter 215 and OAR chapter 660, division 6, contemplate that a lawfully established dwelling or residence may always be used for residential purposes. As explained below, the county's argument nevertheless fails, because we disagree with its contention that short-term rental is indistinguishable from ordinary residential use of a dwelling.

As LUBA explained, a "dwelling" or "residence" requires use as a home. A home is occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way. *See Webster's* at 1082 (defining "home" as "the house and grounds with their appurtenances habitually occupied by a family : one's principal place of residence : DOMICILE"). *Cf.* ORS 90.110(6) (excluding "[v]acation occupancy" from application of the Residential Landlord Tenant Act); ORS 90.100(51) (defining "[v]acation occupancy" as "occupancy in a dwelling unit, not including transient occupancy in a hotel or motel, that has all of the following characteristics: (a) The occupant rents

the unit for vacation purposes only, not as a principal residence; (b) The occupant has a principal residence other than at the unit; and (c) The period of authorized occupancy does not exceed 45 days.").

By defining "dwelling unit" to include buildings or portions thereof that "may be used for residential occupancy by no more than 15 persons for a period that does not exceed 30 consecutive nights by any one person," the county has expanded its definition of "dwelling unit" beyond buildings used as homes. ZDO 202 (as amended). The same is true of its omission of the previous requirement that "[o]ccupants of the guest house and the primary dwelling shall live together as one housekeeping unit." ZDO 833.01. Short-term rentals, as addressed by the ordinances, are different from ordinary residential uses because they include groups of strangers who occupy a building in a transitory way—"for a period that does not exceed 30 consecutive nights." Thus, assuming, without deciding, that the existence of a lawful dwelling or residence carries with it the right to ordinary residential use, ordinary residential use does not include short-term rentals as addressed in the county's ordinances.

We further observe that the county's newly adopted amendment to its county code regarding short-term rentals, the aforementioned requirements in CCC title 8, includes the definition of "short-term rental" as "a dwelling unit, or portion of a dwelling unit, that is rented to any person or entity for *lodging* or residential purposes, for a period of up to 30 consecutive nights." Ordinance No. 09-2020 (emphasis added). The county's ZDO defines "commercial use" as "[t]he use of land and/or structures for the conduct of retail, service, office, artisan, restaurant, *lodging*, child care, adult daycare, entertainment, private recreational, professional, and similar uses." ZDO 202 (emphasis added). The county recognizes that short-term rentals are often advertised on various websites such as Airbnb and VRBO. The nature of such advertisement and resulting use of the dwelling, or parts thereof, is that the dwelling is to be used for short-term lodging for compensation. The county's proposed use of dwellings as short-term rentals would qualify as a "commercial use" under the county's ZDO. Although it is true that the occupancy itself may be of a residential nature—temporarily

living in the dwelling—the use of the dwelling as a short-term rental for compensation is not the same as the use of a dwelling as a home. We are not persuaded by the county's contention that the nature of the use of a dwelling remains as a residential one, and as originally approved or established in the resource zone, when it is used as a short-term rental.

　　　　We turn to the relevant statutes in ORS chapter 215. ORS 215.203(1) provides, in part:

> "Zoning ordinances may be adopted to zone designated areas of land within the county as exclusive farm use zones. Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284."[6]

"Farm use" is defined, in part, as

> "the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the preparation, storage and disposal by marketing or otherwise of the products or by-products raised on such land for human or animal use. 'Farm use' also includes the current employment of land for the primary purpose of obtaining a profit in money by stabling or training equines including but not limited to providing riding lessons, training clinics and schooling shows. 'Farm use' also includes the propagation, cultivation, maintenance and harvesting of aquatic, bird and animal species that are under the jurisdiction of the State Fish and Wildlife Commission, to the extent allowed by the rules adopted by the commission. 'Farm use' includes the on-site construction and maintenance of equipment and facilities used for the activities described in this subsection. * * *"

ORS 215.203(2)(a).

_____

[6] ORS 215.213 applies in counties that adopted a marginal lands system prior to 1993, and ORS 215.283 applies in nonmarginal lands counties. ORS 215.283 applies in Clackamas County. ORS 215.284 restricts the establishment of single-family dwellings not provided in conjunction with farm use on land zoned EFU; the meaning of that statute is not implicated by the parties' arguments on review before us.

We have previously explained that "[t]he 'exclusively' and 'except as otherwise provided' language [in ORS 215.203(1)] evidences a legislative intent to encourage the use of EFU-zoned land solely for farm use and to treat the permitted nonfarm uses in the listed statutes as exceptions to the use of that land for farming activities." *Warburton v. Harney County*, 174 Or App 322, 328, 25 P3d 978, *rev den*, 332 Or 559 (2001). ORS 215.283(1) contains a list of uses that "may be established in any area zoned for exclusive farm use."[7] ORS 215.283(2) contains a list of nonfarm conditional uses that a county may allow in an EFU zone if the county determines that the use will not significantly affect surrounding lands devoted to farm use under ORS 215.296—the "farm impacts test." That is, the uses permitted in ORS 215.283(2) are conditionally allowed if they meet the farm impacts test. In *Warburton*, we stated that "subsection (1) of ORS 215.283 delineates *exceptions* to what normally would be allowed in EFU zones" and that "[i]n keeping with [the legislature's intent], the listed nonfarm uses in ORS 215.283(1) should not be expansively interpreted to encompass uses that would subvert the goal of preserving land for agriculture use." 174 Or App at 328 (emphasis in original); *see also Central Oregon LandWatch v. Deschutes County*, 276 Or App 282, 289, 367 P3d 560 (2016) (applying same legislative intent to subsection (2) of ORS 215.283). Our prior explanation that the uses delineated in ORS 215.283 are meant to be read as *exceptions* to use of EFU land supports LUBA's conclusion that the correct question here is whether state law expressly allows the short-term rental use of dwellings on land zoned for resource uses.

The conditional uses outlined in ORS 215.283(2) provide contextual support for the conclusion that the legislature specifically provides for vacation use or transient lodging, subject to the farm impacts test, when it intends to

---

[7] For example, ORS 215.283(1)(d) provides, in part, that "a dwelling" may be established "on real property used for farm use if the dwelling is occupied by a relative of the farm operator or the farm operator's spouse *** if the farm operator does or will require the assistance of the relative in the management of the farm use and the dwelling is located on the same lot or parcel as the dwelling of the farm operator," and ORS 215.283(1)(e) provides, in part, that "primary or accessory dwellings and other buildings customarily provided in conjunction with farm use" may be established.

allow such uses in a resource zone. ORS 215.283(2)(c) permits campgrounds; ORS 215.283(2)(t) allows a "destination resort that is approved consistent with the requirements of any statewide planning goal relating to the siting of a destination resort"; and ORS 215.283(2)(cc) allows "[g]uest ranches in eastern Oregon, as described in ORS 215.461." ORS 215.283(2) also specifies certain uses of existing dwellings that are conditionally allowed, subject to the farm impacts test in ORS 215.296, on EFU land: ORS 215.283(2)(u) permits "[r]oom and board arrangements for a maximum of five unrelated persons in existing residences"; ORS 215.283(2)(o) provides for "[r]esidential homes as defined in ORS 197.660,[8] in existing dwellings"; and ORS 215.283(2)(i) authorizes "home occupations as provided in ORS 215.448."[9] We agree with LUBA's assessment that those express regulations of uses and living arrangements within existing dwellings "undermines the county's broad contention that *any* residential use of an existing dwelling is allowed, subject only to existing statutory restrictions." (Emphasis in original.)

There is similar contextual support in regard to uses that are authorized in forest zones. OAR 660-006-0025 provides, in part,

"(1)  Goal 4 requires that forest land be conserved. Forest lands are conserved by adopting and applying comprehensive plan provisions and zoning regulations consistent with the goals and this rule. In addition to forest practices and operations and uses auxiliary to forest practices, as set forth in ORS 527.722, the Commission has determined that five general types of uses, as set forth in the

---

[8] ORS 197.660(2) defines "residential home" as "a residential treatment or training home, as defined in ORS 443.400, a residential facility registered under ORS 443.480 to 443.500 or an adult foster home licensed under ORS 443.705 to 443.825 that provides residential care alone or in conjunction with treatment or training or a combination thereof for five or fewer individuals who need not be related. Staff persons required to meet licensing requirements shall not be counted in the number of facility residents, and need not be related to each other or to any resident of the residential home."

[9] We note that 1000 Friends suggests that ORS 215.448 provides a pathway to permit overnight lodging businesses and vacation rentals on resource land. LUBA did not address whether a short-term rental could be conditionally permitted as an accessory use through a home occupation approval. We do not address it either.

goal, may be allowed in the forest environment, subject to the standards in the goal and in this rule. These general types of uses are:

"* * * * *

"(d)    Dwellings authorized by ORS 215.705 to 215.757 (ORS 215.757); and

"(e)    Other dwellings under prescribed conditions."

As an example of the kind of dwelling authorized by the rule, ORS 215.705 permits a single-family dwelling to be established under certain circumstances if the "lot or parcel on which the dwelling will be sited was lawfully created and was acquired by the present owner * * * prior to January 1, 1985," or "[b]y devise or by intestate succession from a person who acquired the lot or parcel prior to January 1, 1985." ORS 215.705(1)(a). ORS 215.755 allows replacement dwellings, "hardship" dwellings where a hardship is suffered by the existing resident or a relative of the resident, and "[c]aretaker residences for public parks and public fish hatcheries."

ORS 215.757, which was adopted in 2019, allows a county to approve, subject to certain restrictions noted in the statute, an accessory dwelling to be constructed that is occupied by the owner or a relative "to allow the relative to assist in the harvesting, processing or replanting of forest products or in the management, operation, planning, acquisition or supervision of forest lots or parcels of the owner."

Notably, ORS 215.757(3) states that "[i]f a new single-family dwelling unit is constructed under this section, a county may not allow the new or existing dwelling unit to be used for vacation occupancy as defined in ORS 90.100." The county argues that "[i]f, as LUBA concludes, any use of land whatsoever must be explicitly set out in [a] statute otherwise it is prohibited, then the restriction in [subsection (3)] is entirely unnecessary." We understand the county to argue by extension that the legislature knows how to explicitly prohibit vacation uses of dwellings, and therefore that it would have done so throughout the land use laws it if had intended to prohibit them.

In ORS 215.757, the legislature allowed an accessory dwelling to be built so that family could assist with

certain forest uses; by specifically prohibiting the accessory dwelling to be used for vacation occupancy, it prevents the particular accessory dwelling to be built for one purpose and then later turned into a vacation rental. That is, even if short-term rentals are at some point allowed, this particular accessory dwelling will be excluded from that use. We are not persuaded that this specific prohibition as to a particular type of approved unit for family members undermines our conclusion, which is based on the text and context of all of the relevant statutes, that the intent of the legislature is to prohibit the types of uses of land in resource zones that are addressed by the county's amendments.

In addition, OAR 660-006-0025(4) lists certain uses that "may be allowed on forest lands" subject to review standards in OAR 660-006-0025(5)—similar to the conditional uses in ORS 215.283(2). For example, OAR 660-006-0025(4)(e) allows "[p]rivate parks and campgrounds," where a campground is "an area devoted to overnight temporary use for vacation, recreational or emergency purposes, but not for residential purposes." OAR 660-006-0025(4)(p) provides that "[p]rivate seasonal accommodations for fee hunting operations may be allowed" subject to other rule provisions and a restriction that accommodations "are limited to no more than 15 guest rooms." OAR 660-006-0025(4)(w) similarly allows for "[p]rivate accommodations for fishing occupied on a temporary basis" subject to certain conditions. Those conditional uses are all temporary or seasonal and evidence an intent to restrict vacation and recreation activities on resource land except as specified.

Having reviewed the statutory scheme as it relates to the use of resource land, we conclude that regardless of whether the question is whether the short-term rental use of dwellings is implicitly included in the allowance of "dwellings" or "residences" on that land or, instead, whether state law expressly allows the short-term rental use of dwellings on land zoned for resource uses, the answer is the same: It does not. Accordingly, the county's ordinances conflict with state law, and LUBA correctly remanded the decision to the county.

Affirmed on petition and cross-petition.