Argued and submitted April 5, the decisions of the Court of Appeals and the Land Use
Board of Appeals affirmed August 29, reconsideration denied October 26, 1989

CRAVEN,
*Petitioner on Review,*

*v.*

JACKSON COUNTY et al,
*Respondents on Review.*

(LUBA 88-023; CA A49322; SC S35826)

779 P2d 1011

Sandra Smith Gangle, Salem, argued the cause for petitioner on review. With her on the petition was Depenbrock, Gangle & Naucler, Salem.

E. R. Bashaw, County Counsel, Medford, argued the cause for respondent on review Jackson County. With him on the response was Wendie L. Kellington, Assistant County Counsel, Medford.

U. Andrew Samad, Ashland, argued the cause and filed the response to the petition *pro se* for respondent on review.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for intervenor Department of Land Conservation and Development. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

FADELEY, J.

## FADELEY, J.

We are asked to decide whether Respondent Samad's proposed winery and related retail activity are lawful conditional uses in an exclusive farm use (EFU) zone under ORS 215.283(2)(a).[1] The question is whether the proposed uses are "commercial activities that are in conjunction with farm use."

Samad proposes to build a winery and retail tasting room in conjunction with a vineyard being planted on his land. Petitioner Craven, an adjacent land owner, wants the land to remain exclusively in agricultural use. Over Craven's objections, Respondent Jackson County (County) granted Samad a conditional use permit (CUP) to build a winery, tasting room and limited retail outlet. Craven appealed to the Land Use Board of Appeals (LUBA), which affirmed Samad's CUP as consistent with County's acknowledged comprehensive plan and ORS 215.283(2)(a). The Court of Appeals affirmed. *Craven v. Jackson County,* 94 Or App 49, 764 P2d 931 (1988). We granted review to determine whether the Court of Appeals and LUBA properly interpreted and applied the relevant land use statutes. *See* ORS 197.835(3), 193.835(8), 197.850(9).[2] We affirm.

We adopt the statement of facts from LUBA.

"The applicant proposes to establish a vineyard and winery on a 23 acre parcel zoned Exclusive Farm Use (EFU). The proposed winery is to be constructed before the accompanying

---

[1] ORS 215.283 provides in part:

"(2) Subject to ORS 215.288, the following nonfarm uses may be established, subject to the approval of the governing body or its designate in any area zoned for exclusive farm use:

"(a) Commercial activities that are in conjunction with farm use."

[2] ORS 197.835(3) directs LUBA to reverse or remand, as to the law, a local land use decision, that is not consistent with the acknowledged comprehensive plan and land use regulations to which it is subject. ORS 197.835(8) directs LUBA to reverse or remand a local land use decision if the decision maker improperly construed applicable law. ORS 197.850(9) provides for appellate court review of issues of law arising from LUBA's decision. The statute directs the court to reverse or remand a decision of LUBA that is unlawful in procedure to the substantial prejudice of petitioner's rights or unlawful in substance.

As to facts, the standard for appellate review of LUBA's decision is substantial evidence in the whole record. ORS 197.850(9)(c). By affirming LUBA in this case, we necessarily find that LUBA's decision is not unlawful in procedure to the substantial prejudice of petitioner's rights or unlawful in substance and is supported by substantial evidence in the whole record.

vineyard is fully planted. The winery will process grapes grown on site and at other vineyards, but as the accompanying vineyard produces more grapes, the percentage of wine produced from those grapes will increase.

"The proposed winery is to be constructed in two stages, with a total annual production capacity of 20,000 gallons. The first stage of approximately 7,500 gallon capacity is planned for this year, and the balance for 1994.

"Attached to the approval are a number of conditions, one of which requires the applicant to plant no fewer than 12 acres of grapes within five years. The applicant plans ultimately to plant up to 18 acres of grapes. The conditions also limit retail sales at the winery to wine and other products produced or bottled on the premises with the exception of cork screws, posters of the winery, wine books, postcards of the winery, glasses and T-shirts bearing the winery name and logo."

The CUP also limits on-premise sales to daytime hours, prohibits retail sales on the property before the first wine is produced, requires an approved water supply, precludes automatic transfer of the CUP to subsequent purchasers of the property, and contains restrictions concerning public vehicular facilities in the area.

Jackson County's land use decision-making body found the existing road adequate for the additional traffic that Samad's proposed use is expected to generate. The area is rural with a number of residential uses. Hay is grown on a portion of Samad's land and in the vicinity. A residence and outbuilding are on Samad's premises. Ashland airport's approach zone is nearby to the south. Northbound lanes of Interstate 5 are nearby to the west.

While the CUP requires a vineyard on the winery property, a major portion of the grapes used will not be grown there. At the hearing on the application for the CUP, other winegrowers testified in favor of Samad's CUP because they saw his proposed winery as a potential purchaser of their grapes. Craven does not object to Samad's vineyard. He objects to a winery, tasting room, and other retail activity.

Statewide Planning Goal 3 states: "Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products." The goal requires that local comprehensive land use plans

adopt EFU zones and that individual parcels "shall be appropriate for the continuation of existing commercial agricultural enterprise within the area." OAR 660-15-000(3), Goal 3 (1985) (filed with Secretary of State).

ORS 215.203 to 215.293 regulate EFU zones. ORS 215.203 permits local zoning ordinances to designate EFU zones which limit the employment of the land therein to farm use as defined in ORS chapter 215. By statute, farm use means the current employment of land for the primary purpose of obtaining a profit in money by raising, harvesting, and selling crops, among other uses. ORS 215.203(2)(a). By statute, farm use includes the preparation and storage of the products raised on such land for human use and disposal by marketing or otherwise. ORS 215.203(2)(a). "Current employment" of land includes "[l]and planted in orchards or other perennials * * * prior to maturity," ORS 215.203(2)(b)(C), and "[l]and under buildings supporting accepted farm practices." ORS 215.203(2)(b)(F). Vineyards are a "current employment" of land for farm use because they are land planted in "perennials" even though those perennials may not yet be mature.

"Accepted farming practice" is defined as "a mode of operation that is common to farms of a similar nature, necessary for the operation of such farms to obtain a profit in money, and customarily utilized in conjunction with farm use." ORS 215.203(2)(c). Fermentation of grapes grown and sale of wine on site represent an accepted farming practice as defined. Wineries, which process the yield of vineyards, and tasting rooms, which accompany the winery to promote its product, are "accepted farming practices" because they are "customarily utilized in conjunction with" vineyards. Those uses are included within an EFU zone. Of course, provisions of County's comprehensive plan must be adhered to in the process before an established use may be declared as of right because ORS 215.203(1) requires EFU zones to be consistent with the comprehensive plan.

Additionally, ORS 215.213 provides for other uses within an EFU zone. ORS 215.213(1) builds upon the meaning of farm use found in ORS 215.203. It lists a number of specific non-farm uses which a comprehensive plan could include within an EFU zone, including churches, forest propagation and harvest, solid waste disposal sites, rest stops, and public or

private schools. The list specifically includes "[n]onresidential buildings customarily provided in conjunction with farm use." ORS 215.213(1)(f). Because a young vineyard is a farm use under ORS 215.203, a winery building, of the character and dimensions "customarily provided" as an integral part of the agricultural operations constituting that farm use, qualifies under ORS 215.213(1)(f) as acceptable use within an EFU zone and may be constructed even before any grapes grown on the site mature.[3] However, if ORS 215.213(1)(f) is to provide authority for building on EFU land, the structure's size and capacity must be proportional or commensurate to the existing level of dedication of land in that immediate area to the crop for which the structure is suited.

■     Samad, who has already planted some acres of wine grapes, argues that all his requested uses are legally acceptable "farm uses" today, that he need not wait for any produce from his land to be included in the wine sold in the tasting room nor for wine from grapes grown elsewhere to be fermented or blended and bottled on the premises. He argues that wine, a product of a farm crop, is thus subject to "disposal by marketing" for human use under ORS 215.203(2)(a). According to Samad, country-estate sale of the agricultural product, wine, amounts to an accepted farming practice because it is a mode of operation common to farms of a similar nature, necessary for the operation to obtain a profit while waiting for young vines to mature, and customarily utilized in conjunction with a vineyard as a farm use. ORS 215.203(2)(c).

We agree that farming is a commercial enterprise under the terms of Goal 3 and the definitions in ORS 215.203(2)(a). However, that fact cannot erase other provisions of the regulatory scheme, such as the second sentence of

---

[3] The 1989 legislature enacted prospective legislation, effective November 1989, explicitly providing for wineries in EFU zones. The provision is added to both the list of non-farm uses authorized in ORS 215.213(1) and the list of uses for which a local land use agency may grant a conditional use permit on the authority of ORS 215.283(1). A common definition in the 1989 act covers both authorizations of wineries on farm land. The definition limits winery locations and capacity by the number of actual acres in supporting vineyards, limits the vineyards which may be considered to support the winery to those planted in close geographic proximity, and limits on-site sales to "[w]ines produced in conjunction with the winery" and to items "directly related to wine, the sales of which are incidental to retail sale of wine onsite." The amendment adds that "[s]uch items include those served by a limited service restaurant." Or Laws 1989, ch 525 § 4.

ORS 215.203(1), which provides: "Land within such zones shall be used exclusively for farm use except as otherwise provided in ORS 215.213 or 215.283."[4]

Giving decisive weight to the idea of commercial enterprise and the statutory language "for the primary purpose of obtaining a profit in money" through the marketing products of the land under ORS 215.203(2)(a) could justify countless uses of agricultural land by leading land use decision

---

[4] ORS 215.203 provides in pertinent part:

"(1) Zoning ordinances may be adopted to zone designated areas of land within the county as exclusive farm use zones. Land within such zones shall be used exclusively for farm use *except as otherwise provided in ORS 215.213 or 215.283.* Farm use zones shall be established *only when such zoning is consistent with the comprehensive plan.*

"(2)(a) As used in this section, 'farm use' means the *current employment of land* for the primary purpose of obtaining a profit in money by *raising, harvesting and selling crops* or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. 'Farm use' includes the *preparation and storage of the products raised on such land for human use* and animal use and *disposal by marketing* or otherwise. * * *

"(b) 'Current employment' of land for farm use includes:

"* * * * *

"(C) *Land planted* in orchards or other *perennials,* other than land specified in subparagraph (D) of this paragraph, *prior to maturity;*

"* * * * *

"(F) Land under buildings supporting accepted farm practices;

"* * * * *

"(c) As used in this subsection, 'accepted farming practice' means a *mode of operation that is common to farms of a similar nature,* necessary for the operation of such farms to obtain a profit in money, and *customarily utilized in conjunction* with farm use." (Emphasis added.)

ORS 215.213 provides in pertinent part:

"(1) The following uses may be established in any area zoned for exclusive farm use:

"* * * * *

"(f) Nonresidential buildings customarily provided in conjunction with farm use.

"* * * * *

"(2) The following uses may be established in any area zoned for exclusive farm use if the use meets reasonable standards adopted by the governing body:

"* * * * *

"(c) Commercial activities that are in conjunction with farm use."

The text of ORS 215.283(2)(a) is found in n 1, *supra.*

makers down the road of profit-making from the sale of agricultural products. Such an interpretation could permit a shopping mall or supermarket as a farm use so long as the wares sold are mostly the products of a farm someplace. Marketing of farm products could be established by a gift shop selling candles of tallow and beeswax, a clothing store that sells wools, cottons, and silks from worms nourished on cultivated mulberry leaves, perhaps even a furrier who specializes in ranch mink coats, a bakery, a coffeehouse, a butcher shop, and a pharmacy with a section featuring natural remedies from foxglove, flea bane, and Saint-John's-wort. The goal of preserving land in productive agriculture would be subverted. There would be no need for ORS 215.213 or 215.283, or for the cross reference to them in the second sentence of ORS 215.203(1), if that were a proper interpretation of the statute. It is not.

ORS 215.213(2) conditionally extends the types of non-farm uses which, if the statutory conditions are satisfied, may be established in an EFU zone. One such use is "[c]ommercial activities that are in conjunction with farm use." ORS 215.213(2)(c). The phrase "commercial activities that are in conjunction with farm use" is not defined in the statutes, but if the winery, tasting room, and additional product sales are commercial activities that are in conjunction with a farm use, Samad may have such use outright within an EFU zone without obtaining a CUP, *provided* that the county has effectively adopted reasonable standards through its governing body and the proposed use meets those reasonable standards. ORS 215.213(2). Such standards were not adopted when Samad applied for a CUP in December 1987 or when the county granted his CUP in early 1988.[5]

This lack of standards does not defeat Samad's CUP.

---

[5] County's Additional Memorandum to Craven's petition for review, at 2, states that County has attempted to set ORS 215.213(2) "standards" governing commercial activities in conjunction with farm use by adopting an ordinance requiring a conditional use permit from the county for such uses. The phrase about commercial activities is included in both ORS 215.213(2), where local standards are a condition for applying the terms, and ORS 215.283(2), where a conditional use permit is required. Assuming without deciding that this county ordinance satisfies the conditional standards requirement to make ORS 215.213(2) applicable to Samad's proposal, the result is the same as that flowing from his conditional use permit application under ORS 215.283(2).

In the absence of the effective adoption of reasonable standards by the county's governing body, Samad's uses may nonetheless qualify as commercial activities that are in conjunction with farm use through the conditional use permit. In other words, Samad's uses may be permitted under ORS 215.283(2). That statute provides that a local governing body or its designate may approve a *non-farm* use within any area zoned EFU, provided that the use is one of those described in subsection (2) of ORS 215.283. One such use is "[c]ommercial activities that are in conjunction with farm use." ORS 215.283(2)(a).

■ The phrase upon which the validity of the CUP turns is "in conjunction with farm use," which is not statutorily defined. We believe that, to be "in conjunction with farm use," the commercial activity must enhance the farming enterprises of the local agricultural community to which the EFU land hosting that commercial activity relates. The agricultural and commercial activities must occur together in the local community to satisfy the statute. Wine production will provide a local market outlet for grapes of other growers in the area, assisting their agricultural efforts. Hopefully, it will also make Samad's efforts to transform a hayfield into a vineyard successful, thereby increasing both the intensity and value of agricultural products coming from the same acres. Both results fit into the policy of preserving farm land for farm use.

Sales of souvenirs which advertise the winery may cause others to come to the area and buy the produce of the vineyards and farms roundabout. Such sales may reinforce the profitability of operations and the likelihood that agricultural use of the land will continue. At least LUBA could reasonably so find, as it did, and interpret the incidental sales of souvenirs with logos as being "in conjunction with farm use."

■ When interpreting and applying the statutes in effect at the time of Samad's application for a CUP, a local land use agency or LUBA could reasonably conclude, based on the statutes, that a vineyard is farm use and that the winery and tasting room are either farm use or commerical activity in conjunction with farm use.

The decisions of the Court of Appeals and the Land Use Board of Appeals are affirmed.