790 July 3, 2025 No. 26

IN THE SUPREME COURT OF THE
STATE OF OREGON

FRIENDS OF YAMHILL COUNTY,
*Respondent on Review,*

*v.*

YAMHILL COUNTY,
*Respondent,*

*and*

GRANGE HILL LLC,
*Petitioner on Review.*

(LUBA 2022-081) (CA A180472) (SC S070290)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 1, 2024, at Willamette University College of Law, Salem, Oregon.

Andrew Mulkey, 1000 Friends of Oregon, Portland, argued the cause and filed the brief for respondent on review.

Kevin H. Kono, Davis Wright Tremaine LLP, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Elaine Albrich and Meagan A. Himes.

Steve Elzinga, Sherman, Sherman, Johnnie & Hoyt LLP, Salem, filed the brief for *amicus curiae* The Ground LLC. Also on the brief was Mark Hoyt.

Alexandria E. Dolezal, Crag Law Center, Portland, filed the brief for *amici curiae* Jason Lett, Mike McCarthy, and Shelley Wetherell. Also on the brief was Meriel L. Darzen.

FLYNN, C.J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The final order of the Land Use Board of Appeals is reversed, and the case is remanded to the Land Use Board of Appeals for further proceedings.

———————
 * On judicial review from a final order of the Land Use Board of Appeals. 325 Or App 282, 529 P3d 1007 (2023).

**FLYNN, C.J.**

Although Oregon's land use laws strictly limit how Exclusive Farm Use (EFU) land may be used, a county generally has authority to approve "home occupations" in that zone, subject to numerous specified conditions. ORS 215.283(2)(i); ORS 215.203(1). In this case, Yamhill County approved a "home occupation" permit for Grange Hill to operate a nine-guestroom bed and breakfast adjacent to its vineyard, on land zoned for EFU, in a structure that Grange Hill had not yet built. Friends of Yamhill County (Friends) challenges the approval, contending that the proposed bed and breakfast does not meet one of the specified conditions for a home occupation on EFU land—that it must be operated "substantially in *** [t]he dwelling" or "[o]ther buildings normally associated with uses permitted in the zone in which the property is located." ORS 215.448(1). At issue is the meaning of the "dwelling" within which a home occupation may operate under ORS 215.448(1).

The Land Use Board of Appeals (LUBA) affirmed the county's approval of the home occupation. LUBA reasoned that the county permissibly concluded that Grange Hill's bed and breakfast would be operated in a "dwelling" because Grange Hill had approval from the county to construct a category of "dwelling" normally allowed in the zone—a "primary dwelling in conjunction with farm use"—and because the county had found that the proposed structure "meets the design standards for [a] single-family residence" and would be used as a residence for the innkeeper. In doing so, LUBA rejected Friends' argument that, in order to qualify as a "dwelling" for purposes of ORS 215.448(1), the structure in which Grange Hill proposed to operate its home occupation needed to satisfy all of the requirements for the "primary dwelling in conjunction with farm use" that Grange Hill had authority to construct, including that a "primary dwelling" must be a structure designed and used as a home for a farm operator. *Friends of Yamhill County v. Yamhill County*, ___ Or LUBA ___, ___ (LUBA No 2022-081, Dec 27, 2022) (slip op at 11-12). According to LUBA, that general requirement for a "primary dwelling" was not relevant to whether the structure would be a "dwelling" as

required by ORS 215.448. The Court of Appeals reversed LUBA's decision, however, concluding that the proposed structure—as a matter of law—is not a "primary dwelling" because it is a "motel."

This court granted Grange Hill's petition for review, and we now affirm the Court of Appeals in part and reverse in part. Although we are not persuaded by the Court of Appeals' reasons for concluding that the structure fails to qualify as a "dwelling" as a matter of law, we agree, for other reasons, that LUBA erred in affirming the county's approval of Grange Hill's home occupation permit. As we will explain, we conclude that the legislature intended the "dwelling" requirement for a home occupation under ORS 215.448 to mean a structure that satisfies the requirements for a particular category of "dwelling" that the land use laws normally allow on property in the zone. When, as here, the purported category of dwelling is a "primary dwelling" on EFU land, those requirements include that the structure will be the home for a farm operator. Because LUBA erroneously dismissed that requirement as irrelevant to whether the proposed structure satisfies the "dwelling" requirement in ORS 215.448, we reverse LUBA's decision, and we remand the case to LUBA for further consideration of Friends' challenge to the county's approval of the proposed home occupation.

## I.   OVERVIEW OF APPLICABLE LAND USE LAW

Before turning to the details of this case, we provide a brief overview of the pertinent statutory land use protections. In 1973, Oregon enacted a comprehensive and unified statewide land use planning system. SB 100 (1973); *Lake Oswego Preservation Society v. City of Lake Oswego*, 360 Or 115, 118, 379 P3d 462 (2016). As part of that comprehensive statutory scheme, the legislature established the Land Conservation and Development Commission (LCDC), to which it delegated the setting of statewide land use goals. ORS 197.030; ORS 197.040. One of those statewide goals, Goal 3, is "[t]o preserve and maintain agricultural lands." OAR 660-015-0000(3); Goal 3: *Agricultural Land*s, Oregon's Statewide Planning Goals and Guidelines, https://www.oregon.gov/lcd/OP/Documents/goal3.pdf (accessed June 25,

2025). The legislature has directed every county in the state to adopt and maintain a comprehensive land use plan that complies with the statewide goals. ORS 197.175(2). Consistent with those plans, counties may adopt ordinances that "zone designated areas of land within the county as exclusive farm use zones." ORS 215.203(1).

Generally, land that a county has designated as an EFU zone under its master land-use plan "shall be used exclusively for farm use," except as otherwise provided by specific statutes. ORS 215.203(1). The legislature has identified uses of EFU land that are permitted "as of right" and others that are permitted as "conditional uses." *Brentmar v. Jackson County*, 321 Or 481, 496, 900 P2d 1030 (1995);[1] ORS 215.283(1), (2). A county may not restrict the uses that are allowed "as of right," but it may restrict, or opt not to allow, "conditional uses." *Brentmar*, 321 Or at 496.

Only a few types of structures are permitted on EFU land as of right under ORS 215.283, including "primary or accessory dwellings and other buildings customarily provided in conjunction with farm use." ORS 215.283(1)(e). Additional, conditional, uses may be permitted by the local governing body as long as the proposed use satisfies the statutory criteria for the particular conditional use. ORS 215.283(2). As pertinent here, conditional uses that counties may permit on EFU land include so-called "[h]ome occupations," which are subject to numerous specified conditions and subject to approval by the local governing body or its designee. ORS 215.283(2)(i).

Although the land use statutes contain no express definition of "home occupation," some of the more descriptive

---

[1] In *Brentmar*, we addressed ORS 215.213(1), which lists a number of uses that "may be established," and concluded that "the legislature intended that the uses delineated in ORS 215.213(1) be uses 'as of right[.]'" 321 Or at 496. Throughout this opinion, we primarily cite to provisions of ORS 215.283, which contains an essentially duplicate list of permitted uses "in any area zoned for exclusive farm use." The primary difference between the lists is that ORS 215.213, which predates ORS 215.283, applies only to counties that had adopted "marginal lands provisions" under a process that the legislature eliminated in 1993. *See* Or Laws 1993, ch 792, § 29 (providing that counties that previously had adopted "marginal lands provisions under ORS 197.247 (1991 Edition) *** may continue to apply those provisions," but that "[a]fter January 1, 1993, no county may adopt marginal lands provisions").

statutory conditions create a general picture of what the legislature had in mind. At least in an EFU zone, a "home occupation" is "operated by a resident or employee of a resident of the property on which the business is located," is operated at least "substantially in * * * [t]he dwelling" or "[o]ther buildings normally associated with uses permitted in the zone," and has no more than five on-site employees. ORS 215.448(1).

## II.  BACKGROUND

As described above, the dispute focuses on whether the proposed bed and breakfast will satisfy the requirement of ORS 215.448 that it operate substantially within a "dwelling." The pertinent background facts are undisputed for purposes of the issue before us.

Grange Hill owns property consisting of nearly 19 acres of high-value EFU land in Yamhill County, including approximately 13 acres of vineyard. The property's prior owner had obtained county approval to build a "principal dwelling customarily provided in conjunction with farm use"—the county's term for a type of use that the land use statutes refer to as a "primary dwelling." *See* Yamhill County Zoning Ordinance (YCZO) 402.03 (providing that a "[p]rincipal dwelling customarily provided in conjunction with farm use on high-value farmland," shall be permitted in the county's exclusive farm use district, subject to specified criteria); *see also* ORS 215.283(1) (providing that uses permitted on land zoned for exclusive farm use include "primary or accessory dwellings and other buildings customarily provided in conjunction with farm use").

The prior owner also had sought, and obtained, a conditional use permit to operate a nine-guestroom bed and breakfast in the approved "principal farm dwelling." That previously approved application described the intended structure as "a two-story, single-family dwelling containing a dining area, living room, kitchen, one resident bedroom suite, and nine guest bedrooms." *Friends of Yamhill County*, ___ Or LUBA at ___ (slip op at 8). After obtaining the dwelling permit and the conditional use permit, but before

constructing the intended dwelling, the prior owners sold the property to Grange Hill.

The transfer of the property to Grange Hill transferred the permit to build a "principal farm dwelling customarily provided in conjunction with farm use" on the property, but it did not transfer the conditional use permit, which expressly required any subsequent owner to seek new approval for any home occupation. Accordingly, after purchasing the property, Grange Hill submitted its own application for a home occupation. As set out by the county, the application sought approval to operate a bed and breakfast with nine guestrooms "from a single-family dwelling, once it has been built."

The county described the design of the "proposed single-family dwelling" as a structure having "ten bedrooms with ensuite bathrooms," each of which "can be accessed from a shared heated hallway that shares common atmosphere with the rest of the house." In addition, the design plans showed "[c]ommon areas and living space" with an adjacent kitchen "next to an area marked as a common space on the first floor." Based on that description, the county found that "[t]he structure meets the design standards for a single-family residence," which it described as "a building normally found in the" EFU zone. The county thus determined that the proposed bed and breakfast met the "dwelling" requirement for a home occupation. It also determined that the proposal met the other statutory and county-specific requirements for the requested conditional use permit.

Friends appealed the county's decision to LUBA, challenging the county's determination that Grange Hill's proposed bed and breakfast would meet the requirement of ORS 215.448 that the home occupation operate "substantially in" a "dwelling." Friends raised several assignments of error, including that the proposed "dwelling," although purportedly allowed in the EFU zone as a "primary dwelling in conjunction with farm use," would not qualify as a "primary dwelling" because it would not be "designed and used as a home or primary residence for a farm operator." Friends also contended that the design of the proposed structure,

particularly the number of rooms devoted to lodging rooms, made the structure a "hotel or motel" as a matter of law, neither of which is a dwelling or other building allowed in the EFU zone.

LUBA agreed with some aspects of Friends' arguments, but it ultimately affirmed the county's decision. *Friends of Yamhill County*, ___ Or LUBA at ___ (slip op at 32). LUBA agreed that, in order to issue the original approval for a primary dwelling "customarily provided in conjunction with farm use," the county needed to determine that the dwelling would be "occupied by a person or persons" involved in the farm operation, citing OAR 660-033-0135(4) (c).[2] *Id.* at ___ (slip op at 10-11). But LUBA concluded that the occupancy determination was an initial—not an ongoing—requirement, and that it was not pertinent to whether the structure qualified as a "dwelling" within which the home occupation must operate under ORS 215.448. *Id.* LUBA emphasized that the county had found that the structure "meets the design standards" for a single-family residence and would be used as a residence for the innkeeper, which LUBA described as "consistent with the term 'dwelling,' " and LUBA affirmed those findings. *Friends of Yamhill County*, ___ Or LUBA at ___ (slip op at 14-15). Thus, LUBA reasoned that the county had not erred in concluding that Grange Hill's application to operate a bed-and-breakfast home occupation satisfied the "dwelling" requirement of ORS 215.448. *Id.* at ___ (slip op at 16).

The Court of Appeals reversed. The court described the key inquiry as "whether the proposed structure is primarily dedicated as a dwelling for the use of a farm family, or whether it is a motel, primarily dedicated to the lodging of guests or tourist[s]." *Friends of Yamhill County v. Yamhill County*, 325 Or App 282, 289, 529 P3d 1007 (2023). The court then answered that inquiry by concluding that "the design features of the proposed structure as a whole are those of a motel, for transient lodging" and, thus, that "the proposed

---

[2] LUBA cited OAR 660-033-0135(4)(c), which refers to occupancy by "a person or persons who produced the commodities[.]" *Friends of Yamhill County*, ___ Or LUBA at ___ (slip op at 11). But it also accepted Friends' premise that a primary residence must be occupied by a "farm operator." *Id.* at ___ (slip op at 12).

structure is not itself a 'dwelling'" under ORS 215.283. *Id*. at 294-95. According to the court

> "[t]he statutory scheme makes clear that the *entire structure*—not merely a portion of it—must be a farm dwelling that provides a home occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way."

*Id*. at 295 (emphasis in *Friends of Yamhill County*, internal quotation marks omitted). The court added that "the structure within which the bed and breakfast inn exists must be, first, a dwelling." *Id.* at 295. Grange Hill sought review, which this court allowed.

In arguments on review, Grange Hill contends that the Court of Appeals' conclusion—that, as a matter of law, the structure at issue here is not a "dwelling"—misconstrues the "dwelling" requirement of ORS 215.448. Grange Hill primarily argues that the plain meaning of "dwelling" is "a home occupied by *a person* as their household or by a group of people sharing a household." (Emphasis added.) Thus, according to Grange Hill, the only pertinent question regarding the "home occupation" permit is whether the structure will serve as a home for someone. It emphasizes—as did LUBA—that the structure will be a home for the "innkeeper" of the bed and breakfast and that the structure will have some characteristics commonly associated with dwellings, such as bathrooms, a kitchen, and bedrooms connected to a common living space. "That alone is sufficient," Grange Hill contends, to satisfy the "dwelling" requirement of ORS 215.448(1)(c)(A).

Friends, on the other hand, contends that LUBA erred in construing the "dwelling" requirement, although Friends does not embrace the Court of Appeals' focus on whether the "entire structure" will be used as a home. Rather, Friends faults LUBA for having adopted a construction of the "dwelling" requirement that "allows an applicant to build any type of building so long as the building is capable of being used in whole or in part as a home." Friends reiterates the arguments that LUBA rejected, including that ORS 215.448 requires a "dwelling" that is "customarily provided

in conjunction with farm use" and that a structure purporting to satisfy the requirement as a "primary dwelling customarily provided in conjunction with farm use" must be a dwelling that is designed and used as a residence for a person who operates the farm. Friends also contends that the county's approval of a nine-guestroom bed and breakfast is inconsistent with the legislature's declared priority for preserving farmland for agricultural use. *See* ORS 215.243 (declaring that "[t]he preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources" and that, for a variety of reasons, "[e]xpansion of urban development into rural areas is a matter of public concern").

## III. DISCUSSION

As indicated above, the only home occupation requirement in dispute in this court is the requirement in ORS 215.448(1)(c)(A) that the proposed bed and breakfast "shall be operated substantially in * * * [t]he dwelling." Whether the Court of Appeals, or LUBA, correctly construed that requirement presents a question of statutory construction that we resolve by employing the analytical framework described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and modified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Under that framework, we examine the text of the statute in context, as well as any helpful legislative history, all with the "paramount goal" of determining the intent of the legislature that enacted the disputed provision. *Gaines*, 346 Or at 171-72.

As we will explain, the statutory text, context, and legislative history persuade us that the legislature intended the "dwelling" required under ORS 215.448 to mean a structure that satisfies the requirements for a particular category of "dwelling" that the land use laws allow as of right in the zone. Here, the only identified category of allowed dwelling is a "primary dwelling in conjunction with farm use," and, as we will explain, the legislature intended such dwellings to mean a farm operator's home. Because LUBA concluded that Grange Hill could satisfy the "dwelling" requirement of ORS 215.448 without proof that the proposed home occupation will operate in a structure that satisfies the

requirements for the "primary dwelling" that the structure purports to be, we conclude that LUBA based its decision on an incorrect interpretation of the statute.

### A.   *The Meaning of the "Dwelling" in ORS 215.448*

The term "dwelling" is not defined in the land use statutes, and the arguments of the parties, as well as the decisions of LUBA and the Court of Appeals, present a spectrum of competing interpretations. We begin with the construction arrived at by the Court of Appeals, under which the proposed structure is—as a matter of law—not a "dwelling," because that is the conclusion that Grange Hill challenges on review.

As described above, the Court of Appeals concluded that "the proposed structure is not a 'dwelling'" under the land use laws "for which a 'home occupation' can be authorized" and, thus, that LUBA's affirmance of the conditional use permit "is unlawful in substance." *Friends of Yamhill County*, 325 Or at 292.

Grange Hill contends that, in concluding as a matter of law that the proposed structure is not a "dwelling" under the land use laws, the Court of Appeals erroneously added limitations to the meaning of "dwelling" in ORS 215.448 that go beyond the meaning that the legislature intended. Grange Hill primarily argues that the legislature intended the "dwelling" requirement in ORS 215.448 to mean only that the structure is "a home occupied by a person as their household or by a group of people sharing a household." It insists that questions about whether the proposed structure qualifies as a "dwelling" are addressed through other aspects of the land use permitting processes that govern whether the structure can be built, and it contends that questions about whether the structure can be built are not at issue in this challenge to the conditional use permit. Emphasizing the county's findings that there is no dispute that the proposed structure will be a home for the "innkeeper" of the bed and breakfast, and that the structure will have characteristics commonly associated with dwellings, *i.e.*, bathrooms, a kitchen, and bedrooms connected to a common living space, Grange Hill contends that LUBA correctly affirmed the

county's determination that the proposed home occupation will operate substantially in a "dwelling."

Although we ultimately agree with Grange Hill that the Court of Appeals erred in concluding that the proposed structure as a matter of law is not a "dwelling," we are not persuaded by Grange Hill's argument that the legislature intended the "dwelling" required by ORS 215.448 to mean any structure that is occupied by at least one person as their household. Instead, we conclude that the legislature intended the "dwelling" requirement in ORS 215.448 to be met only by a structure that satisfies the requirements for a category of dwelling that may be established as of right on the property.

### 1. *Text and context*

To aid our analysis of what the legislature intended the "dwelling" requirement to mean, we set out the text of that requirement in the broader statutory context:

"(1)   he governing body of a county or its designate may allow, subject to the approval of the governing body or its designate, the establishment of a home occupation and the parking of vehicles in any zone. However, in an exclusive farm use zone, forest zone or a mixed farm and forest zone that allows residential uses, the following standards apply to the home occupation:

"(a)   It shall be operated by a resident or employee of a resident of the property on which the business is located;

"(b)   It shall employ on the site no more than five full-time or part-time persons;

"(c)   It shall be operated *substantially in*:

"(A)   *The dwelling*; or

"(B)   Other buildings normally associated with uses permitted in the zone in which the property is located; and

"(d)   It shall not unreasonably interfere with other uses permitted in the zone in which the property is located.

"(2)   The governing body of the county or its designate may establish additional reasonable conditions of approval for the establishment of a home occupation under subsection (1) of this section.

"(3)   Nothing in this section authorizes the governing body or its designate to permit construction of any structure that would not otherwise be allowed in the zone in which the home occupation is to be established.

"(4)   The existence of home occupations shall not be used as justification for a zone change."

ORS 215.448 (emphases added).

According to Grange Hill, "dwelling" is a term of common usage, meaning a structure that a person uses as a home, and we should presume that the legislature intended the term to have its ordinary meaning. *See Brown v. GlaxoSmithKline, LLC*, 372 Or 225, 231, 548 P3d 817 (2024) (explaining the "common usage" general presumption and exceptions); *Webster's Third New Int'l Dictionary* 706 (unabridged ed 2002) (defining "dwelling" as referring to "a building or construction used for residence"); *id.* at 1931 (defining "residence" as referring to "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit" and "a building used as a home").

Pointing to the structure of ORS 215.448(1)(c), Grange Hill contends that the legislature intentionally did not further limit the "dwellings" in which a home occupation may operate. ORS 215.448(1)(c)(B)—the "[o]ther buildings" provision—includes the qualifying phrase "normally associated with uses permitted in the zone in which the property is located":

"[The home occupation] shall be operated substantially in:

"(A)   The dwelling; or

"(B)   Other buildings normally associated with uses permitted in the zone in which the property is located."

ORS 215.448(1)(c). And Grange Hill urges us to understand that the legislature failed to similarly qualify the term "dwelling" in subparagraph A because the legislature wanted "dwelling" to remain unqualified.

Although we have sometimes concluded that the legislature's failure to qualify a statutory term means "that the

legislature intended that provision to be read in an expansive sense," we have also emphasized that there can be multiple reasons for the legislature to omit a limiting phrase from one part a statute. *See Lake Oswego Preservation Society*, 360 Or at 129-30 (explaining that, "[w]hereas the absence of narrowing language in [a statute] could mean that the legislature intended that provision to be read in an expansive sense, an equally plausible inference is that the omission means nothing at all, except that the legislature did not perceive the need to clarify its intent"). Here, text and context persuade us that the legislature intended the "dwelling" to which ORS 215.448(1)(c)(A) refers to mean a "dwelling" that is "normally associated with uses permitted in the zone in which the property is located." The legislature's failure to separately include the requirement in ORS 215.448(1)(c)(A) "means nothing at all, except that the legislature did not perceive the need to clarify its intent" in that way. *Lake Oswego Preservation Society*, 360 Or at 129-30.

Three aspects of the statutory text and context point to that conclusion. First, the "substantially in * * * [t]he dwelling" requirement of ORS 215.448 applies to home occupations located in "an exclusive farm use zone, forest zone or a mixed farm and forest zone that allows residential use." And in each of those zones, the land use laws limit the permissible types of "dwelling." *See* ORS 215.283 (farm use); ORS 215.720 - ORS 215.757 (forest use). Second, regardless of whether a home occupation is located within a dwelling or other building, the legislature has specified that the approval of a home occupation does not authorize "construction of any structure that would not otherwise be allowed in the zone." ORS 215.448(3). Third, the legislature has specified that home occupations "shall not be used as justification for a zone change." ORS 215.448(4). Together, those provisions suggest that the legislature intended to require that a home occupation would be conditionally permitted only if it will operate substantially within a structure—dwelling or other building—that the land use laws normally allow in the zone in which the property is located.

That meaning, in turn, points to a legislative intent that the "dwelling" requirement incorporates the land use

laws and regulations that govern whether a proposed structure qualifies as a "dwelling" allowed on property in the particular zone. And when the structure is in any area zoned for exclusive farm use, the categories of dwelling normally allowed, or allowed "as of right," are limited to dwellings that facilitate the farming operation: "primary or accessory dwellings *** customarily provided in conjunction with farm use," ORS 215.283(1)(e), and a "dwelling" that "is occupied by a relative of the farm operator or the farm operator's spouse" if "the farm operator does or will require the assistance of the relative in the management of the farm use," ORS 215.283(1)(d). In other words, it is not enough that the structure will be occupied by "a person as their household." We thus disagree with Grange Hill's primary argument for reversing the decision of the Court of Appeals.

We nevertheless agree with Grange Hill that the Court of Appeals erred in concluding, as a matter of law, that the proposed structure is not a "dwelling." In explaining its conclusion that "the proposed structure is not a 'dwelling'" under the land use laws, the court did not articulate a specific construction of "dwelling," but it stated that "[t]he statutory scheme makes clear that the *entire structure*—not merely a portion of it—must be a farm dwelling that provides a 'home [is] occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way.'" *Friends of Yamhill County*, 325 Or App at 295 (quoting *1000 Friends of Oregon v. Clackamas County*, 320 Or App 444, 453, 514 P3d 553 (2022)) (emphasis in original);[3] *see also Webster's* at 1082 (defining "home" as "the house and grounds with their appurtenances habitually occupied by a family : one's principal place of residence : DOMICILE"). The court also characterized the ultimate inquiry as whether the structure is "primarily dedicated" as a "dwelling" or a "motel," *id.* at 289, and it concluded that "the design features of the proposed structure as a whole are those of a motel, for transient lodging," *id.* at 294. Because

___

[3] The court in *1000 Friends of Oregon* defined a "home" for the purposes of explaining why the allowance under ORS 215.283 of "dwellings" did not implicitly include allowance of "the short-term rental use of dwellings." 320 Or App at 459.

the court decided the "dwelling" question as a matter of law, we understand the court to have concluded that those limitations are part of the statutory requirements for a "dwelling" under ORS 215.448.

Text and context do not suggest, however, that the legislature intended the term "dwelling" to incorporate a requirement that the "entire structure" will be used as a home for long-term residents or to exclude every structure that can be said to have design features of a motel in addition to the design features of a single-family residence. As indicated, the land use statutes contain no definition of "dwelling," and the plain meaning of the term adds little except to suggest that a structure qualifying as a "dwelling" must be used by someone as their residence or home. *See Webster's* at 706 (defining "dwelling" as referring to "a building or construction used for residence"); *id.* at 1931 (defining "residence" as "a building used as a home" and dwelling place "to which one intends to return as distinguished from a place of temporary sojourn or transient visit"). Although we have concluded from the broader statutory context that the legislature intended the "dwelling" requirement to incorporate other provisions of the land use laws that define the categories of dwelling normally allow in the zone in which the property is located, those provisions do not limit the number of bedrooms or bathrooms that the dwelling may include. Nor do they preclude a resident who meets the requirements for a "home occupation" conditional use permit from using many of those bedrooms to operate a bed and breakfast, or other home business.[4]

Indeed, adding such limitations to the meaning of the "dwelling" in which the home occupation may operate would create tension with the type of small businesses that the legislature intended to allow as "home occupations." The conditions that the legislature has imposed for a home occupation allow a resident—or employee of the resident—to operate a home business large enough to employ up to five

---

[4] Friends has argued that a bed and breakfast facility with more than five guest rooms must be considered a "hotel or motel" because that is how the state building code's structural specialty code (OSSC) classifies such occupancies. OSSC 310.2; OSSC 310.4. The Court of Appeals reasoned that those code standards are relevant to the nature of a structure but not dispositive of whether the structure is a "dwelling" for purposes of ORS 215.448, and we agree.

persons full-time and to operate the business "substantially in" a structure that qualifies as a "dwelling." ORS 215.448(1) (a), (b). In combination, those conditions suggest that the legislature contemplated that a building can qualify as a "dwelling" for purposes of ORS 215.448 even when a resident is operating a home occupation large enough to occupy a substantial portion—if not a majority—of the space in the "dwelling," compared to the space reserved for the resident.

Moreover, a limitation that precluded a structure from qualifying as a "dwelling" under ORS 215.448 if part of the structure is used for transient lodgers would be incompatible with newer land use provisions that expressly contemplate that a bed and breakfast is one type of home occupation that may be approved for EFU land. *See* ORS 215.452(13) (specifying the scale of meal service at "a bed and breakfast facility" that "is sited as a home occupation on the same tract as a winery"); ORS 215.453(12) (same); ORS 215.449(10) (same for farm breweries); ORS 215.451(10) (same for cider businesses). Those newer provisions have effect only if it is possible for a "bed and breakfast facility" to satisfy the "dwelling" requirement for a home occupation, and that informs our understanding that the "dwelling" requirement can be satisfied even if the dwelling will be occupied at least in part by transient lodgers. *See, e.g.*, *State v. Ofodrinwa*, 353 Or 507, 529, 300 P3d 154 (2013) (describing limited circumstances under which later legislative enactments can inform the meaning of related, earlier-adopted provisions).

In short, given the multiple indications that the legislature contemplated home occupations—including bed-and-breakfast facilities—that would prevent the resident from continuing to use the "entire structure" as a home for long-term residents, text and context do not persuade us that the legislature intended to condition home occupations on proof that the "entire structure" remain a home for long-term residents. That is, we do not understand the legislature to have intended to preclude some portion of a residence from being used for commercial purposes, as opposed to residential purposes, if the requirements for a home occupation are met.

Nor are we persuaded that the legislature intended to preclude a structure from being a "dwelling" if it has some

characteristics of another type of building. We understand the Court of Appeals' concern that this structure purporting to be a "primary dwelling" also has design characteristics of a "motel," which is not a category of building allowed in an EFU zone. But the county found that the same proposed structure meets the design characteristics of a single-family residence, and LUBA affirmed that finding. There undoubtedly will be structures that seemingly straddle the design standards for two categories of building—whether it is a structure that meets the design standards of a single-family residence but also has nine bedrooms with *en suite* bathrooms or a structure that meets the design standards of a single-family residence but includes an enormous "home theater" space. When that is the case, the county and LUBA must determine whether the structure is a "dwelling," and the fact that the structure might have characteristics consistent with a single-family dwelling is not dispositive. But the fact that the structure has some characteristics of a motel is not dispositive either. Thus, to the extent that the Court of Appeals concluded that a structure that has some characteristics of a motel cannot be a dwelling, as a matter of law, we disagree.[5]

### 2. *Legislative history*

Those conclusions are consistent with legislative history, which reflects a general intent to protect agricultural land in an EFU zone while also allowing counties to authorize home occupations—including bed and breakfast facilities—subject to limitations imposed by state statutes and any applicable county ordinances—including that they

---

[5] Because we resolve this case on the basis of LUBA's erroneous conclusion that the structure at issue can qualify as a "dwelling" under ORS 215.448 without satisfying the requirements for the "primary dwelling" the structure purports to be—here, without satisfying the requirement that the structure be occupied by a farm operator—we need not, and do not, address when, as a matter of law, a structure that has the characteristics of both a single-family residence and another type of structure is a "dwelling."

We note, however, that a "dwelling" sharing the design characteristics of a category of building that is not allowed as of right in the zone might struggle to satisfy other requirements of ORS 215.448 that give effect to the legislature's goal of preserving Oregon's agricultural economy, including that the home occupation "shall not unreasonably interfere with other uses permitted" in the EFU zone and that the home occupation process does not authorize "construction of any structure that would not otherwise be allowed in the zone." ORS 215.448(1)(B)(d), (3).

operate substantially within structures that are allowed in the zone. "Home occupations" were first permitted in EFU zones as a conditional "nonfarm" use in 1977, Or Laws 1977, ch 788, § 2, and specific conditions on the approval of "home occupations" followed, with the enactment of what became ORS 215.448 in 1983, Or Laws 1983, ch 743, § 2.[6]

The 1983 law included an earlier version of the current "dwelling" requirement. Or Laws 1983, ch 743, § 2. The 1983 enactment was the result of the passage of House Bill (HB) 2625, a bill intended to address concerns about "cottage industries" in rural areas. Tape Recording, House Committee on Environment and Energy, HB 2625, Apr 27, 1983, Tape 174, Side A (statement of Rep Verner Anderson). Proponents of the bill explained that small businesses were operating in rural areas and that it would be beneficial to both recognize and regulate them. Tape Recording, Senate Committee on Energy and Environment, HB 2625, June 27, 1983, Tape 187, Side A. They explained that the businesses were often just starting out and lacked the capital to rent a storefront or locate in an industrial park. Tape Recording, House Committee on Environment and Energy, HB 2625, Apr 27, 1983, Tape 174, Side A (statement of Rep Peg Jolin). They articulated their expectation that, when the businesses grew, they would relocate to industrial areas. Tape Recording, Senate Committee on Energy and Environment, HB 2625, June 27, 1983, Tape 186, Side A (testimony of Manager of the Roseburg Area Chamber of Commerce Charles Adams).

Legislators expressed concerns about the construction of structures specifically for the businesses. Tape Recording, House Committee on Environment and Energy, HB 2625, May 20, 1983, Tape 212, Side B (statement of Committee Staff Beth Samson). In response, the committee removed a provision from the originally introduced bill that would have allowed home occupations to be operated in "[b]

---

[6] The 1977 legislature amended ORS 215.213 to authorize the approval of "[h]ome occupations carried on by the resident as an accessory use within their dwelling" as a conditional "nonfarm" use in any area zoned for exclusive farm use. Or Laws 1977, ch 788, § 2. And the 1983 legislature adopted a list of conditions for approval of "home occupations," which were codified as ORS 215.448(1) (1983). Or Laws 1983, ch 743, § 2.

uildings constructed for the purpose of operating the home occupation if the buildings are similar in appearance and size to buildings normally associated with uses permitted in the zone in which the property is located." HB 2625, A-eng (1983). It was explained that the provision was removed to address concerns "that buildings would be specifically constructed in order to start these industries in EFU zones." Tape Recording, House Committee on Environment and Energy, HB 2625, May 20, 1983, Tape 212, Side B (statement of Committee Staff Beth Samson); *see also* Tape Recording, Senate Committee on Energy and Environment, HB 2625, June 27, 1983, Tape 186, Side A (testimony of Manager of Roseburg Area Chamber of Commerce Charles Adams) (explaining intent was to use existing structures).

In addition, the legislature added the provision that became ORS 215.448(3), which specifies that nothing about the process for allowing home occupations authorizes the "construction of any structure that would not otherwise be allowed in the zone in which the home occupation is to be established." Or Laws 1983, ch 743, § 2. Senator John Kitzhaber, a proponent of the bill, stated that the provision was intended to address "the concern that was raised about the building [of] new structures specifically for this purpose." Tape Recording, Senate Committee on Energy and Environment, HB 2625, June 30, 1983, Tape 198, Side A (statement of Sen John Kitzhaber). He also explained that he was aware of concerns about potential conflicts between farm and nonfarm uses and that was why he had been "so interested in clarifying the language," stating that "the activity has to be carried out in buildings normally associated with the uses permitted in that zone." *Id.*

Later legislative history reflects concern with what advocates viewed as overly restrictive decisions regarding home occupations. The text currently set out at ORS 215.448(1) is the product of legislative amendments in 1995, through House Bill (HB) 2561. Or Laws 1995, ch 465, § 1. HB 2561 amended ORS 215.448 in four main ways. First, it provided that a home occupation could be operated by the resident's employee, expanding the concept of a home occupation beyond a business operated by a resident of the

property. Or Laws 1995, ch 465, § 1. Second, it specified that the five-employee limit was for on-site employees, expanding the size of business that could be a home occupation. *Id.* Third, it modified what had been a requirement that home occupations operate "in" a dwelling or other building normally associated with uses permitted in the zone, allowing home occupations that operate "substantially in" those locations. *Id.* Fourth, it modified what had been a requirement that a home occupation "not interfere" with other uses permitted in the zone, requiring instead that a home occupation "not unreasonably interfere" with those uses. *Id.*

The legislative history indicates that legislators in 1995 were reacting to permit denials by county boards of directors, LUBA, and the Court of Appeals that proponents viewed as applying an overly restrictive construction of the home occupation requirements, including a decision by the Columbia County Board of Commissioners to reject a home occupation request for a bed and breakfast because the guests would be allowed to walk on the owner's property. Exhibit E, House Natural Resources Committee, Subcommittee on Environment and Energy, HB 2561, Mar 10, 1995 (written testimony of Attorney Robert VanNatta). Although the initial bill proposed a limited amendment to permit activities such as parking vehicles at home occupations, at an early hearing, an attorney practicing land use law, Robert VanNatta, also specifically reported that restrictive text in ORS 215.448 had defeated car repair, daycare center, car repossession, and bed-and-breakfast home occupations. *Id.* And the subcommittee chair encouraged advocates to work with the Association of Oregon Counties (AOC) to "make whatever appropriate amendments you feel need to be made to this whole concept of home occupations and not just deal with the vehicles." Tape Recording, House Natural Resources Committee, Subcommittee on Environment and Energy, HB 2561, Mar 10, 1995, Tape 30, Side B. Those amendments added the new provisions, described above, that somewhat expanded the operations that counties could approve as "home occupations."

The legislative history confirms our conclusion, based on the text and context, that the legislature intended

to allow home occupations—including bed and breakfasts—to operate in a "dwelling" allowed as of right in the zone, even if the home occupation itself prevents the "entire structure" from being used as a home. It also confirms our conclusion that the legislature intended the "dwelling" requirement to incorporate the land use laws and regulations that govern whether a proposed structure meets the requirements for a category of "dwelling" that is normally allowed on property in the particular zone. Because Grange Hill, the county, and LUBA all have identified the relevant dwelling category in this case as a "primary dwelling," we turn to the land use requirements for that category of dwelling.

B. *The Meaning of a "Primary Dwelling" in an Exclusive Farm Use Zone*

Although the land use laws do not include an express definition for a "primary" dwelling "customarily provided in conjunction with farm use," several limitations are clear from context. Collectively, those limitations point to the "primary dwelling" on EFU land as meaning, among other requirements, a structure that is the home of a "farm operator."[7] First, the term "farm use" is defined to mean "the current employment of land for the primary purpose of obtaining a profit in money by * * * agricultural or horticultural use or animal husbandry or any combination thereof." ORS 215.203(2)(a).[8] The primary "dwelling" provided in conjunction with such use suggests the structure occupied as a home by the person primarily engaged in that use of the land.

---

[7] Neither this court nor the Court of Appeals has had an occasion to construe the meaning of the term "farm operator," as used in ORS 215.283, and the issue is not argued by the parties in this case. But LUBA has concluded that the meaning of the term "farm operator" is informed by OAR 660-033-0130(9), which—for purposes of an allowed dwelling for a relative of the farm operator—defines a "farm operator" as the "'person who operates a farm, doing the work and making the day-to-day decisions about such things as planting, harvesting, feeding and marketing.'" *Richards v. Jefferson County*, 79 Or LUBA 171, 180 (2019); *see also Kenagy v. Benton County*, 22 Or LUBA 356, 358 (1991) (looking to the common meaning of "operator" as found in *Webster's*, which includes "[o]ne that produces a physical effect or engages himself in the mechanical aspect of any process or activity").

[8] ORS 215.203(2)(a) lists specific examples of "farm use" activities of "raising, harvesting and selling crops or the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products[.]"

Second, context indicates that, in contrast to "accessory dwellings," "primary dwellings" are occupied by the "farm operator." With respect to "accessory dwellings" that are "customarily provided in conjunction with farm uses," the legislature has indicated that such a dwelling may be established when "needed to provide opportunities for farmworker housing for individuals primarily engaged in farm use whose assistance in the management of the farm is or will be required by the farm operator on the farm unit." ORS 215.278. And the limitations on a dwelling "occupied by a relative" similarly emphasize the connection to the farm operator. Such dwellings are permitted only if they will be "occupied by a relative of the farm operator or the farm operator's spouse," only "if the farm operator does or will require the assistance of the relative in the management of the farm use," and only if located "on the same lot or parcel as the dwelling of the farm operator." ORS 215.283(1)(d). We thus agree with Friends' premise that a structure allowed on EFU land as a "primary dwelling" means a farm operator's home.

C. *Both the Court of Appeals and LUBA Incorrectly Construed the "Dwelling" Requirement.*

As we have explained, we are not persuaded that the Court of Appeals correctly construed the "dwelling" requirement in ORS 215.448 to mean that the "entire structure" must be used for long-term residents or that the structure must not have any of the design characteristics of a building that is not allowed in the zone. To that extent, we disagree with the decision of the Court of Appeals.

Nevertheless, we agree with the Court of Appeals that LUBA incorrectly construed the meaning of "dwelling," because we have concluded that the legislature intended the "dwelling" requirement under ORS 215.448 to mean a structure that satisfies the requirements for a category of dwelling that the land use laws allow as of right on property in the zone. Those laws limit the categories of dwelling allowed on EFU land to "primary or accessory dwellings *** customarily provided in conjunction with farm use," ORS 215.283(1)(e), and a "dwelling" that "is occupied by a relative of the farm operator or the farm operator's spouse" if "the farm operator does or will require the assistance of the relative in

the management of the farm use." ORS 215.283(1)(d). And the only category of dwelling that has been identified in this case is a "primary dwelling."

Although LUBA recognized that, as we have explained, a "primary dwelling" means a farm operator's home, it dismissed as irrelevant that key requirement that defines a "primary dwelling." *Friends of Yamhill County*, ___ Or LUBA at ___ (slip op at 11). LUBA reasoned that the requirement does not continue once the county has approved construction of a "primary dwelling" and, thus, that the requirement does not govern whether the proposed structure qualifies as a "dwelling" for purposes of ORS 215.448. *Id*. at ___ (slip op at 11-12).

Even if LUBA's premise is correct, however, its conclusion does not follow. A home occupation is a conditional use under the land use laws that requires its own application and approval process. *See* ORS 215.448 (describing the approval conditions). One of the conditions for approval is that the home occupation "shall be operated substantially in" a "dwelling" or other building "normally associated with uses permitted in the zone in which the property is located." ORS 215.448(1)(c). For the reasons explained above, we are persuaded that the legislature intended to require, as a condition for approval of a "home occupation," that the occupation will operate substantially in a structure that meets the land use requirements for at least one category of structure allowed in the zone. Thus, it is the new conditional use permit, not the original dwelling approval, that makes it essential for the structure to meet the requirements for a "dwelling" or other building "normally associated with uses permitted in the zone in which the property is located."[9]

---

[9] The Court of Appeals observed that "it does not appear that the proposed structure could qualify as a 'primary dwelling,' because the record does not indicate whether the 'resident' would be the person who manages the vineyard," but it did not decide the case on that basis, because neither party pointed to the "farm operator" requirement in briefing to the Court of Appeals. *Friends of Yamhill County*, 325 Or at 292. But that meaning of "primary dwelling" is argued by Friends in the briefing in this court, it was discussed at oral argument, and it was an argument below that LUBA expressly addressed. Moreover, this court has "an independent duty to correctly interpret any statute that comes before us, regardless of the arguments and interpretations offered by the parties." *Strasser v. State of Oregon*, 368 Or 238, 260, 489 P3d 1025 (2021).

### IV.  CONCLUSION

On judicial review of a LUBA decision, the appellate court may reverse or remand a LUBA order if the order is "unlawful in substance or procedure." ORS 197.850(9) (a); *see Craven v. Jackson County*, 308 Or 281, 283, 779 P2d 1011 (1989) (describing the statutory standard for judicial review by the Court of Appeals as applicable to review in this court as well). Although we agree with the Court of Appeals that LUBA's order was unlawful in substance, we disagree with that court's reasons for concluding that the proposed structure, as a matter of law, is not a dwelling. Instead, we conclude that LUBA erred for a different reason. Based on our analysis of text, context, and legislative history, we have concluded that the "dwelling" for purposes of the home occupation statute must satisfy the requirements for a category of "dwelling" that the land use laws allow in the zone. Because LUBA concluded otherwise, its decision to affirm the home occupation permit in this case was based on an incorrect construction of ORS 215.448 and, thus, was unlawful in substance. Accordingly, we reverse and remand the case to LUBA to consider Friends' challenge to the county's approval of the conditional use permit under the standards articulated in this opinion.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the Land Use Board of Appeals is reversed, and the case is remanded to the Land Use Board of Appeals for further proceedings.